*New-Haven,*
*July, 1836.*

Straits Turn.
pike Company
*v.*
Hoadley.

---

### THE STRAITS TURNPIKE COMPANY *against* HOADLEY.

A turnpike company, incorporated in 1799, were authorized, by their charter, to erect and keep up turnpike gates on their road.  In 1818, the company erected a gate on their road, with upright posts, and a cross-beam over the gate, supporting a roof twelve feet six inches above the travelled path. When the charter was granted, and the gate established, it was usual to erect turnpike gates with cross-beams of this height.  In *June*, 1833, the defendant came to the gate in question, with a load of clocks, placed upright in three tiers, the greatest height of the load being thirteen feet above the travelled path, and higher than such loads usually are.  The defendant paid the toll, and the gate-keeper opened the gate, in the usual way ; but the height of the load being greater than that of the cross-beam and roof, it could not pass under them; and the defendant forcibly removed them.   In an action of trespass, brought by the turnpike company, for this injury to their property, it was held, that this was a reasonable exercise of their right, and consequently, the defendant was liable.

THIS was an action of trespass, for forcibly removing, on the 1st of *June*, 1833, the posts and frame of the turnpike gate on the plaintiffs' road in  *Woodbridge.*

The cause was tried, on the general issue, closed to the court, at *New-Haven, January* term, 1836, before *Waite,* J.

In *October,* 1799, the plaintiffs were incorporated as a turnpike company, to establish and keep in repair a turnpike road from *New-Haven* to *Litchfield,* and were authorised to keep up turnpike gates and toll-houses, and to receive toll of persons travelling on said road.   At the place mentioned in the declaration, there was a turnpike gate, with upright posts, and a cross-beam over the gate to strengthen the frame-work, and hold the posts firmly in their places.   This cross-beam supported the roof, for the convenient shelter of such travellers as might be necessarily detained in paying their toll.   The cross-beam and roof were fastened to the top of the gate-posts

and pinned to the toll-house, which stood immediately adjoining one of the posts, and were twelve feet and six inches above the travelled path. The gate, with the same beam and roof over it, has stood at or near this place, ever since the year 1818. At the time the company was incorporated, and the gate established, it was usual to erect turnpike gates with cross-pieces of the height of the one in question.

New-Haven,
July, 1836.

Straits Turnpike Company
v.
Hoadley.

The only interruptions that have occurred, at any time, by reason of the construction of this gate, previous to the transaction in question, have been once, when a dwelling-house was moved on wheels along this road ; once, when a load of hay, five times larger in bulk than the usual size of a load of hay, was drawn upon it ; in both of which instances, the gate and its entire frame-work were, by the consent of the plaintiffs, removed, on payment of an extra price beyond the usual toll for the trouble and expense of the removal ; and two instances, in which one *Marks*, who had an unusual load of empty casks, was obliged to remove some of the casks from the top of the pile, so as to pass under the beam and roof.

The roof of the covered bridge on the *Hartford* and *New-Haven* turnpike road, at *Whitneysville*, is eleven feet and six inches above the travelled path, and has been erected ten years. The cross-piece of the gate on the *Rimmon's Falls* turnpike road, near *Westville*, is eleven feet six inches high, and has been so for more than thirty years. The covered bridge on the road from *New-Haven* to *New-London*, in *New-Haven*, commonly called *Tomlinson's* bridge, recently erected, is twelve feet and one inch. The usual height of barn doors for the admission of loads of hay, is from ten feet, six inches, to eleven feet, six inches.

The defendant, in *June*, 1833, had a load of clocks, placed, for their more convenient carriage, upright in boxes, consisting of thirty boxes in three tiers, and drawn by two yoke of oxen. The greatest height of the load was thirteen feet above the travelled path ; and therefore, it could not, by reason of its height, pass through the gate, without either taking off one tier of the boxes, or removing the cross-beam and roof. It is usual for the clock-makers to load with three tiers of clocks ; but the defendant's load was made up of clocks higher than is usual.

The defendant went into the plaintiff's toll-house, and sawed off the pin, which held the beam and roof to the house ; and

*New-Haven,*
July, 1836.

Straits Turn-
pike Company
*v.*
Hoadley.

having then attached his team to one of the gate-posts, drew down to the ground the posts, cross-beam, roof and gate, and thus passed along the road. The defendant had previously paid the usual toll for a loaded wagon or cart; and the plaintiff's agent had opened the gate, in the usual way, but refused to take down the beam and roof. The defendant, with the assistance of one man who accompanied him, could not have taken down the beam, without taking down the posts and frame-work of the gate. The amount of actual damage done, was twenty-five dollars.

Upon these facts, the defendant claimed, that the court ought to render judgment in his favour; for that he had in law a right, under the circumstances, to remove the gate, it being a nuisance. The court did not so decide, but found the issue for the plaintiff, and rendered judgment in his favour, to recover of the defendant twenty-five dollars, damages, and costs. The defendant thereupon moved for a new trial.

*R. S. Hinman* and *H. A Mitchell,* in support of the motion, contended, that the plaintiffs, by virtue of their charter, had no more power than is *expressly* given; that as the object of the gate was merely to prevent passengers and teams going through without an opportunity of collecting the toll, the plaintiffs had a right to erect such a gate only as was necessary for that purpose; that the cross-beam and roof over the gate could not be necessary; and that, therefore, these obstructions constituted a nuisance, which the defendant might lawfully remove.

*Ingersoll,* contra, contended, 1. That when the legislature authorized this turnpike gate to be established, it is to be presumed, that they meant such a gate as was *usual* on turnpike roads; and it appears from the motion, that at that time it was usual to erect turnpike gates with cross-pieces of the height of the one in question. The common, customary and popular meaning is that which we must apply to their language;—that meaning which is commonly intended, by such language, when employed upon that subject about which the law is conversant.    1 *Sw. Dig.* 12.

2. That a way for all persons to travel, "with their horses, coaches, carts and carriages," does not imply, that carts of unusual description, and loaded in an unusual manner, must pass.

New-Haven, July, 1836.

Straits Turn-pike Company v. Hoadley.

*Roscoe* on *Ev.* 271. Suppose that instead of having a load of such unusual height as to interfere with the cross-piece, it had been of such unusual width as to interfere with the side-posts, or to sweep across the whole road, and render the removal of the toll-houses necessary to make a path for it, might they too be pulled down as nuisances?

3. That even if the cross piece might be removed, the defendant had no right to tear down the whole frame-work of the gate: only so much of the thing as causes the nuisance can be removed. *Chitt. Bla. vol.* 2. *lib.* 4. *p.* 123.

WILLIAMS, Ch. J. The General Assembly have authorised the erection of gates upon this road; and under that act, the gate in question had been erected, for the space of eighteen years; and the question is, whether it has been done in such a manner as is not warranted by the charter.

That any unauthorized obstruction upon a highway, to the annoyance of the public, or of all the King's subjects, as it is expressed, is a nuisance, cannot be doubted. *James* v. *Hayward, Cro. Car.* 185. *Rex* v. *Cross,* 3 *Campb.* 324. 326. Such as tend to annoy the whole community, are common or public nuisances; and such as hurt or annoy the lands, tenements or hereditaments of individuals, are private nuisances. 1 *Hawk. P. C. lib.* 1. *c.* 27. *s.* 1. *Anon.* 1 *Vent.* 26. *Prat* v. *Stearn, Cro. Jac.* 382. But whether a public or private nuisance, if it is not authorized, by the act of the General Assembly, the plaintiffs had no right to place this gate in the highway; and, of course, the defendant might remove it.

It is said, that this charter must be construed strictly; and although it gives a right to erect a gate, it gives no right to erect a house or roof over and across the road; and nothing is granted but what is necessary to carry into effect the privileges granted. That the plaintiffs can have no authority but that conferred by their charter, is admitted; but that charter is to have a fair construction. The privileges granted corporations of this kind, are not principally for the benefit of the corporation, but for the sake of the public, in consideration of services rendered. The state of most of our public roads was such, in the early history of turnpike grants, that to put them in good repair, would have been a burden, in many instances, too great for the towns to bear; and relief was gratefully accepted from

those, who offered to do this public work, for the sake of a toll imposed by the legislature. And it is a well known fact, that in most instances, this toll itself has been a very small remuneration for the service rendered. There is nothing, therefore, in the nature of the grant, that requires any peculiar strictness of construction, as if it were against common right. The object was public improvement, by private capital and at private risk. The charter, then, is to have a reasonable construction ; and such as will give to the grant a full and fair operation.

It is said, by the defendant, that the charter gives a right to erect a gate only, not a house. The charter gives a right to collect toll. That is the great object, as it respects the privilege to the company ; and to do this, they are expressly authorized to establish gates. The height and the width of these gates, and the manner in which they are to be hung, are not given in the act. It must, then, be done in a reasonable manner. And if it has been done in the usual manner, and so as to interrupt or impede the public business but in a very slight degree, this is a reasonable exercise of the right. Now, as to the width of the gate, no complaint is made of that ; but it seems, that twice since it was erected, a house and a load of hay passing along upon the road, could not pass between the side-posts. But no complaint seems ever to have been made on that account ; and none certainly could have been successfully made. These were operations entirely out of the usual course of business, and for which it was not reasonable that the corporation should have been prepared ; and the defendant does not contend, that they were bound to provide for such emergencies.

But it is said, that a roof was not necessary for them to collect their toll ; that it is no necessary part of the gate ; and the privilege of the gate only is given. Now, that a gate may exist without a roof over it, or a cross-beam, is true. But that the one would greatly strengthen the side-posts of the gate and keep them in their place, and that the other would add much to the comfort of the toll-gatherer and the traveller, cannot be denied ; and that a cross-piece is usual, and that this was of the ordinary height, or higher, is not denied. The fact, that in this case, it has remained here eighteen years, without any inconvenience to the public, and without the slighest injury to any individual, except in the cases before-mentioned, and that of

the man who, in two instances, had loaded his empty casks so high that he was obliged to take off some of the top ones, is strong evidence that in the erection of this gate, public convenience was consulted, and a reasonable construction was given to this charter. Certainly, it cannot be said, that it tends to the annoyance of the whole community.

*New-Haven, July, 1836.*

It was said, that although it was not of that character now, it might, by the changes in business, become so ; and that if an obstruction of these dimensions were now justified by the charter, it would then be. This is not a question now before this court. But such a conclusion ought not to be drawn from this decision. The course of business may so change, that what is now no public annoyance, may, by an alteration of circumstances, become a serious interruption to that business ; and if a regard for their own interest and the convenience of the public would not lead these corporations to conform their arrangements to such altered state of things, it would be for the court to determine, under these circumstances, if they did not unreasonably obstruct the public road.

Upon the facts disclosed in this case, the court are of opinion that the defendant was not justified in the injury to this gate ; and that the superior court were correct, and that no new trial ought to be granted.

The other Judges concurred in this opinion.

New trial not to be granted,