### George D. Phelps *vs.* City of Mankato.

#### January 10, 1877.

**Municipal Corporation—Care of Streets.**—It is immaterial how a public street in a city became such—whether by formal acceptance or official action of the city, or by acceptance and user by the public—so far as regards the duty of the city to keep it in safe condition. Evidence held sufficient to sustain the verdict.

Plaintiff and his wife were driving, in the afternoon, in Mankato. Turning from State street into Byron street, their buggy struck a post at the intersection of the two streets, the plaintiff was thrown out, and his leg was broken. For the injuries thus received he brought this action. At the trial in the district court for Blue Earth county, before *Dickinson*, J., it appeared that State street and Byron street were both residence streets, the former seventy-four and the latter sixty-six feet in width. On Byron street the roadway was graded to a width of forty feet—twenty feet on each side of the centre line of the street—the remainder, or thirteen feet on each side of the street, being set apart for sidewalk and trees. Between the graded part of the street and the portion so set apart for trees and sidewalk there was a gutter, which, however, ended about eight feet

from the corner, the street from that point to the corner being smooth and level. On each street there was a row of trees outside the sidewalk. On State street the last tree was ten or fifteen feet from the post, and on Byron street from eight to ten feet. The post was in line with the trees on State street, and just inside the line of the trees on Byron street. The usually travelled track of vehicles turning the corner was close to the post—in the language of one of plaintiff's witnesses, "every one seems to want to go nearer to the post than the others." The post was about six by eight inches, and eighteen inches high. It was of pine, unpainted, and weather-beaten; had been standing about three years, and had often before been struck by passing vehicles. Its situation is shown in the diagram on page 278.

Various exceptions to the admission of evidence were taken at the trial, the nature of which appears in the opinion. The defendant requested the court to instruct the jury that, "from the facts shown in relation to which there is no conflict of evidence, it appears that the plaintiff was guilty of such negligence as to preclude a recovery," which was refused, and an exception taken. The jury found a verdict for plaintiff for $1,000; a new trial was refused and defendant appealed.

*Thomas Bohan* and *Brown & Wiswell*, for appellant.

*Waite & Freeman* and *M. J. Severance*, for respondent.

GILFILLAN, C. J. There was no error in admitting evidence under the complaint. After stating the duty of the defendant to keep the streets in its city in good and safe condition, it alleges "that a certain street in said city, called Byron street, has been for five years last past much travelled and used by the citizens thereof, and others, so much so that said duty of said defendant as to said street was, and became at the time hereinafter mentioned, a matter of public concern." This is hardly sufficient as an allegation that Byron street was a public street, used as such by the public generally, so that the duty of the defendant with respect to

Line of Gutter.

Forty Feet Graded Street.

BYRON ST.

Inside Line of Gutter.

TREE AREA.

Post.

13

13

STATE ST.

Inside Line of Gutter.

TREE AREA.

SIDEWALK.

public streets would attach to it.  The proof, however, shows sufficiently that it was a public street, and, as such proof was admitted without any tenable objection having been made to it, the defect in the pleading was cured.  The objection to the evidence was specifically upon the ground that the complaint does not state that Byron street was ever officially laid out, or had ever been opened or offered for public travel, by defendant.   This assumes that the duty to keep in safe condition does not attach until there has been some official action on the part of the municipal corporation making or recognizing the street.   The objection is bad. How the street became such—whether by formal official action of the city in accepting its dedication, or by acceptance by user on the part of the public—is immaterial so far as concerns the duty of the municipal corporation to keep it in such condition as to be safe for the public to travel along.

From the evidence it was for the jury to determine whether it was negligence for the defendant to allow the post to remain in the street, and also whether the post, considering its size and location, was such that a person travelling along the street, in the exercise of proper care, would have seen it.   The conclusion that a person so travelling would have seen it is not a question of law, and, under the circumstances of this case, it is not so clear that a court should take the consideration of it from the jury.

The question put to the witness—"Did you at one time think of taking off the leg?"—though objectionable in form, was not obnoxious to the objection stated, *i. e.*, that it was immaterial and incompetent.   The answer would tend to show the character of the injury, whether serious or slight.

The questions asked, tending to show that, after the injury, the post was cut down by the defendant, and that it had previously done work on the street, were proper, and so were those tending to show the location of the post, and that other teams had run into it, for such questions were

directly to the point of the dangerous character of the obstruction, and of negligence on the part of defendant.

Order affirmed.