LELAND SEWELL, Respondent, v. THE CITY OF COHOES, Appellant.

The officers of a municipal corporation are vested with authority as commissioners of highways in regard to the streets within its limits, they are agents of the corporation, and it is liable for damages resulting from their failure to keep the streets in a safe condition for public travel.

Where such officers have treated a piece of land, within the municipal limits, as a public street, taking charge of, regulating and paving it, the same as other streets, although it has not been legally laid out as a street, the corporation is chargeable with the same duties and subject to the same liabilities as if it had been properly laid out, and in an action against it, for damages sustained by reason of neglect to keep such land in safe condition for travel, it is estopped from claiming that the land is not a legal highway.

The fact that a bridge over a city street is of sufficient height to allow ordinary carriages to pass under it does not *per se* discharge the municipality from liability to one injured while attempting to pass under it in a vehicle of unusual height; it is for the jury to determine whether, under the circumstances, the vehicle is of such dimensions as is suitable and proper to be used in a city.

Some years prior to August 15, 1874, defendant had appropriated a strip of land within its limits as a street, had graded, paved and laid sidewalks thereon, and it was used as a public street. Over this land and about ten feet above it was a tramway or bridge erected and used by private individuals. On the day specified, plaintiff, who was driving a team of six horses attached to a wagon of unusual dimensions containing lions belonging to a circus company, turned into such street from another After the leading horses turned the corner plaintiff did not look to the front but was looking to the rear to see if the hind wheels of the wagon cleared the corner, and so did not perceive the bridge until the second pair of horses were passing under it; he then tried to stop the horses, but before he could do so he was struck by the bridge and injured. In an action to recover damages for the injury, *held*, that the question of negligence on the part of defendant and of contributory negligence on the part of plaintiff were questions of fact for the jury. Also, that the question whether plaintiff's employers should have provided an additional man, considering the character of the vehicle and team, were for the jury.

Also, *held*, that it was competent for plaintiff to prove resolutions of defendant's common council as to grading and paving the strip of land in question, and a resolution passed soon after the accident, directing the removal of the bridge, and that the same was removed, as tending to

show that defendant exercised authority and control over the strip of land.

*Mayor* v. *Cunliff* (2 N. Y., 165); *Dougan* v. *The C. I. Tr. Co.* (56 N. Y., 8), distinguished.

(Argued June 18, 1878; decided November 12, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict. (Reported below, 11 Hun, 626.)

This action was brought to recover damages for injuries alleged to have been sustained by plaintiff through defendant's negligence in permitting a bridge or tramway to remain across one of the streets of the city, obstructing travel thereon.

It appeared that there was a strip of land in said city, along the Erie canal, about fifty feet wide, running from White street to a bridge across the canal. Some fifteen months prior to the accident, this strip of land had been graded and paved as a street, under and in pursuance of resolutions of its common council, which fixed the grade, etc., and it was used and traveled over as a public highway. The land adjoining this strip, on the side opposite from the canal, was used as a coal yard, and a bridge or tramway extended over the street, which was used to transport coal from the canal to the yard; this structure was about ten feet above the pavement, and was a short distance north of White street. Plaintiff was at the time in the employ of a circus company, and was engaged in driving a team of six horses attached to a vehicle some twenty-one feet in length and ten or twelve feet high, containing lions. Plaintiff was seated upon the top of this vehicle, and drove through White street, turning upon this strip of land for the purpose of crossing the canal. He was unacquainted with the city and did not know of the tramway. After the leading horses turned the corner, plaintiff looked back to see if the hind wheels of the wagon would clear the corner, and did not look forward or see the tramway until just as the second pair of horses passed

under it.  He made an effort to stop the horses, but failed to do so in time, and he was caught and crushed between the bridge and the wagon.

Upon the trial, the resolutions of defendant's council for the grading and paving said strip of land, and a resolution passed two days after the accident for the removal of the tramway, and its subsequent removal, were offered and received in evidence, under objection and exception.

Evidence offered on the part of defendant to show that the passage from White street to the canal bridge was opened by the State was objected to by plaintiff, and was excluded.

*Matthew Hale*, for appellant.  As there was no evidence of any legal negligence or omission of care or duty on the part of defendant plaintiff should have been nonsuited. (*Gorham* v. *Cooper*, 59 N. Y., 660; *Mayor of Albany* v. *Cunliff*, 2 id., 165; *Munn* v. *City of Pittsburgh*, 40 Penn., 364; *Whitney* v. *Town of Essex*, 38 Vt., 270; 2 Laws of 1869, p. 2384; 2 N. Y., 165; *Trustees of Jordan* v. *Otis*, 37 Barb., 50; 1 R. S., 218, §§ 4–8; Laws of 1837, p. 518, § 6.)  The tramway being in existence before defendant assumed the right to pave and grade the passage, the fact that it did this did not impose upon the city a duty or right to remove the tramway.  (*Hume* v. *Mayor, etc., of N. Y.*, 9 Hun, 674; 47 N. Y., 639; *City of Madison* v. *Ross*, 3 Ind., 230; *Turnpike Co.* v. *Hoadley*, 11 Conn., 464.)  Plaintiff should have been nonsuited on account of his admissions as to his own conduct in connection with the accident. (*Cawlus* v. *Mayor*, 6 Bosw., 15; *Hubbard* v. *Concord*, 35 N. H., 52; *Raymond* v. *Lowell*, 6 Cush., 524; *Wilcox Case*, 39 N. Y., 358; *Barker Case*, 45 id., 191.)  Plaintiff was guilty of negligence in remaining in an employment rendered dangerous by reason of the insufficiency in number of his co-employes.  (*Laning Case*, 49 N. Y., 534.)  The court erred in admitting the resolution of the common council as to grading the sidewalk.  (*Dougan* v. *Champ. Trans. Co.*, 56 N. Y., 18.)

*J. H. Clute*, for respondent. When a city grades and paves a highway within its corporate limits, and by the exercise of other unequivocal acts of authority over it, invites general travel thereon as a street, it is chargeable with the same duties in respect thereto as though such street had been formally adopted. (*Houfe* v. *Town of Fulton*, 34 Wis., 608; 9 Am. R., 568; 17 id., 563; *Woodman* v. *Nottingham*, 49 N. H., 387.) Defendant was bound to maintain its streets free from obstruction, and to keep them in such reasonable repair that a traveler would be secure in using them. (*Todd* v. *City of Troy*, 61 N. Y., 506; *Conrad* v. *City of Ithaca*, 16 id., 158.) The question of negligence was one for the jury. (*Baxter* v. *T. and B. R. R. Co.*, 41 N. Y., 502, *Warner* v. *N. Y. C. and H. R. R. R. Co.*, 44 id., 46; *Davis* v. *N. Y. C. and H. R. R. R. Co.*, 47 id., 40; *Cordell* v. *N. Y. C. and H. R. R. R. Co.*, 6 Hun, 46; *Dougan* v. *Champ Trans. Co.*, 56 N. Y., 1; 54 id., 458; *Sheehy* v. *Burger*, 62 Barb., 558; *Blanchard* v. *W. U. Tel. Co.*, 60 N. Y., 510.) Defendant was estopped from disclaiming its liability for failing to guard this street at the point of the accident on the theory of its not being a highway, and that no such duty rested upon it. (*Houfe* v. *Town of Fulton*, 34 Wis., 608; 9 Am. R., 568; 17 id., 463; *Manderchild* v. *City of Dubuque*, 4 id., 254.) The questions whether the vehicle driven by plaintiff was of such unusual proportions that it was not entitled to a passageway over this street, and whether plaintiff's manner of driving it was negligent, were properly submitted to the jury. (*Gregory* v. *Inhab'ts of Adams*, 14 Gray, 242; *Gillespie* v. *City of Newburgh*, 54 N. Y., 458.)

MILLER, J. The plaintiff was injured by coming in contact with a bridge or tramway, which was placed across the street through which he was driving the team under his charge. The officers of a municipal corporation are vested with authority as commissioners of highways, in regard to the streets within its limits, and as such are agents of the

corporation so as to make the latter civilly responsible for acts of omission or commission according to the law applicable to master and servant. (*Conrad* v. *The Trustees of the Village of Ithaca,* 16 N. Y., 158; *Weet* v. *The Trustees of Brockport,* id., 161; *Wyatt* v. *Trustees of Rondout,* 44 Barb., 385; *Todd* v. *The City of Troy,* 61 N. Y., 506.) If they fail to keep the streets in a safe condition for public travel, a person who suffers damage and is free from fault can maintain an action against the city for damages sustained by reason of their neglect of duty.

In the case at bar the bridge or tramway which was the occasion of the accident appears to have been erected by the owners of a coal yard, and there was evidence tending to show that the land upon which the street was located belonged to the State and not to the city. Conceding that such was the case, we think that under the evidence presented upon the trial the defendant was not relieved from liability. The land had been appropriated by the defendant, graded, paved and sidewalk put down by its authority, and was used as a public street in such a manner as to hold out ostensibly to the public that it was such a street, and as to invite them to travel upon it. To all appearances, it being uniformly graded and improved with gutters and pavement, it was one of the thoroughfares of the city, open and free to all, which the municipal authorities assumed the burden and duty of improving to the same extent and in a similar manner as was done in regard to other public streets within its boundaries. Under such a state of facts the defendant having assumed to perform the same duty in regard to it as if it had been formally and lawfully laid out and adopted was bound to the same degree of vigilance as was imposed upon it, in reference to other streets within the limits of the corporation. It matters not, we think, that the tramway was erected and used by the owners of the coal yard, and it is quite sufficient that the defendant had assumed to and did exercise the right to use the land as a street, and to control the same by making

improvements, and as bearing on the question after the injury was committed, directed and caused the removal of the tramway as dangerous to life and property, to fix the liability of the corporate authorities. It is claimed that the acts of the defendant to which reference has been had, did not destroy the right to use the tramway, or impose any other duty than to keep the pavement in repair; that it did not require the removal of the same, and that the defendant was not subjected to any liability arising from negligence in not removing the same. We think that the defendant was bound to exercise the same degree of care and vigilance in reference to this street, as if it had owned the right of way, and it had been lawfully set apart as one of the streets of the city, and that it was obligated to protect the public from all injuries which might arise from any neglect to take proper charge of the same.

The authorities referred to by the defendant's counsel, do not uphold a position adverse to the rule laid down as will be seen by a reference to the leading case which is cited to sustain the position contended for.

In *The Mayor, etc.*, v. *Cunliff* (2 Comst., 165), which is especially relied upon by the defendant, the action was brought for injuries sustained by the falling of a bridge, which was built in pursuance of a contract with the corporation under a statute not constitutionally passed by the Legislature, which fell in by reason of the negligent construction thereof. It appeared that the " Pier Company ".of said city had the care and control thereof and made repairs upon it, and paid a sum awarded to the corporation under the provisions of the act referred to for the improved value by reason of the reconstruction thereof by the corporation. It was held that, in the performance of a public work, the law must have imposed a duty or conferred an authority to do such work. It will be noticed that the defendant had built the bridge under a statute which was declared to be unconstitutional, and that, at the time when the accident happened, the bridge was not under the control of the defendant, but of the pier

company.   It will thus be seen that no duty was imposed upon the defendant to build the bridge in question, and as the law conferred no authority, there could be no liability. Some remarks are made in the opinion of CADY, J., to the effect that officers of a corporation are limited in their legitimate action to the powers conferred upon them by their charters.   This rule might well apply when there was an entire want of power and the corporate body was acting in reference to a matter which was entirely beyond its control and authority, and it was manifest that another party had the control of the bridge, which was defectively constructed, and by means of which defect the accident occurred.   But when the corporation is vested with ample power to perform the act done, such as the laying out of a street, it cannot well be claimed that they are relieved from liability from injury for their neglect, because the act was not done strictly according to law.   If such a rule should prevail, the slightest error in acquiring a right to a public street would leave a party injured by the negligence of the corporate authorities to take care of and keep the same in repair, without a remedy or means of redress.   Having the power to lay out streets, the omission to do it lawfully does not exonerate the corporation from liability from negligence when its officers assume to hold out to the public that a street is located within its limits, and they are invited to use it and to travel upon it.   Such a rule would compel a traveler to determine for himself whether the street was lawfully laid out, and is not upheld by the case cited or supported by authority.

Although the precise question discussed has never been directly presented in this State, the authorities are numerous which sustain a contrary view, as will be seen by a reference to the cases.   In *Mayor* v. *Sheffield* (4 Wall., 189), it is held that where the authorities of a city or town have treated a place as a public street, taking charge of it and regulating it as they do other streets, and the injury occurs by reason of negligence, the corporation cannot, when sued for such injury, defend itself by alleging irregularity in the proceed-

ings or a want of authority, in establishing the street. The rule is well settled that the act of the city in assuming authority to control the land as a street renders it charge-able with the same duties, and imposes upon it the same lia-bilities, as if it had been lawfully laid out, and it is estopped from questioning that it was a lawful road or street. (*Houfe* v. *Town of Fulton*, 34 Wis., 608; *Stark* v. *Lancaster*, 57 N. H., 88; *City of Aurora* v. *Colshire*, 55 Ind., 484; *Phelps* v. *City of Mankato*, 23 Minn., 276.) In the last case cited it was held that it was immaterial whether the street became such by formal acceptance and user by the public so far as regards the duty of the city to keep it in safe condition. It follows that the defendant, by adopting the land and allowing it to be used as a street, holding out to the public that it was such street, and by repairing and improving it as such, was bound to exercise the same degree of care as if it had been laid out strictly according to law, and it cannot escape liability for the alleged reason that it had no control over it and the land belonged to the State.

It is urged that, even if the resolution of the common council and their acts in pursuance thereof were sufficient to establish a street, yet it was not legal negligence to omit removing the tramway. The ground upon which this position is asserted is, that the space between the street and the tramway was more than was necessary for ordinary carriages. It is undoubtedly true that the vehicle which the plaintiff drove was in height somewhat unusual, and beyond that which ordinarily was employed for any purpose. But this does not furnish a sufficient excuse in the corporate authorities of a city for obstructing the passing of carriages of unusual and extra-ordinary proportions and establish negligence *per se*. It is well understood that such vehicles are used for the pur-pose of attracting attention in large cities and elsewhere, of those who may desire to attend shows and exhibitions of the character of the one which was to be exhibited in the city, when the accident occurred, and while no definite rule can be laid down to meet all cases, we think that it was for the

jury to determine, under the circumstances, whether the vehicle used was of such dimensions, as to be suitable and proper to be used in a populous city upon a street established for the common benefit and convenience of the public at large. There are no doubt cases where archways and bridges exist in cities over streets, under the control of the authorities, from which vehicles of this description are properly excluded, and they would lawfully be regarded as obstructions ; but these are well known localities, sanctioned by law or custom, which are understood by all, as not intended for any such purpose. So also in the country, covered bridges may be erected over streams for ordinary purposes, which are far too low in height to authorize the passage of vehicles or animals of an extraordinary size. (See *Turnpike Co.* v. *Hoadley*, 11 Conn., 464; *Gregory* v. *Inhabitants of Adams*, 14 Gray, 242.)

The question whether the plaintiff was justified in driving the team under the tramway, under the facts in evidence, was for the determination of the jury, having in view the character of the team and the nature of the obstruction, and it cannot, I think, be claimed, was improperly decided by the jury. The question of contributory negligence on the part of the plaintiff, was also for the jury. He was bound to exercise ordinary care, prudence, and capacity, and it is not clear that he did not use his faculties to the utmost extent. His attention was at the time engaged in an opposite direction from the tramway, and in taking care of his team. He cast his eye backward for the purpose of seeing that the hind part of the wagon cleared the corner, and the first he knew he was right under the bridge. It is evident that the time was very short between the period when the plaintiff looked backward, and the time when he came in contact with the bridge, but it is not so clear that the act was negligent and that the plaintiff failed to exercise proper care and caution, and to do all that was required of him as a prudent man in the management of his team. (*Gillespie* v. *City of Newburgh*, 54 N. Y., 468.)

The point made that the plaintiff's employers should have provided an additional man considering the character and length of the vehicle and team, was also for the jury to decide, and is not a question of law.

There was no error in the refusals to charge the several requests made by the defendant's counsel. The propositions which they present are mainly covered by the discussion already had, and do not require further examination.

Nor was there any error in any of the rulings as to the admission of evidence. The resolution of the common council as to the grade of the sidewalk, and as to the paving, were competent for the purpose of showing the acts of the defendant in assuming to control the street.

The resolution passed after the injury was also competent for the same purpose, and hence does not come within the rule laid down in *Dougan* v. *Champlain Transportation Co.* (56 N. Y., 1). The evidence offered to show that the place or street passage was opened by the State to the canal bridge was immaterial and could not affect the disposition of the case. There was no error therefore in its exclusion.

No error being found in any of the rulings upon the trial, the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.