## THE CITY OF COHOES, Appellant, *v.* JAMES MORRISON, Respondent.

*Right of a city to recover, from one obstructing a street, a judgment it has been compelled to pay to one injured by reason of such obstruction —how far the defendant is bound by the former judgment when he was notified of the action — dedication of a street — an acceptance on the part of the city must be shown—the acceptance must be subject to all existing burdens — duty of the city to keep its streets in repair.*

This action was brought by the city of Cohoes against the defendant to recover the amount of a judgment which the city, at the suit of one Sewell, had been compelled to pay him because of an injury done to Sewell by a wrongful obstruction of a street, which obstruction was, as between the city and Sewell, the act of the city. The defendant was notified of the action brought by Sewell, and was requested, but failed, to defend it. Upon the trial of this action the judgment-roll in the action against the city was given in evidence.

*Held,* that to make that judgment conclusive evidence, as between the city and the defendant, the city was bound to prove that the defendant was the author of the act whereby Sewell was injured.

That as an inspection of the judgment-roll in that action did not show that that fact had been in issue and determined in that action, and as it was not shown by evidence *aliunde* that it was therein determined, it was necessary for the city to show by proof, outside of that judgment-roll, that the defendant was the author of the act injuring Sewell.

In 1868 the defendant erected a tram-way over the bank of the Erie canal so as to leave a clear space of twelve feet between it and the surface of the canal bank beneath it. The canal bank belonged to the State, and the public were accustomed to travel over it, in passing from a city street, to reach a bridge built by the State across the canal. There was no evidence to show that the city had accepted this portion of the bank as a public street at the time the tram-way was erected. In 1873 the city assumed control and authority over the canal bank, graded and paved it, and in so doing raised its surface so as to reduce the twelve feet of clear space beneath the tram-way to ten feet. In 1874 Sewell, in attempting to drive a circus wagon under this tram-way, was crushed between it and the wagon, the evidence tending to show that if there had been twelve feet of clear space he would have escaped all injury.

*Held,* that as it was only needful for Sewell to show that, as between himself and the city, the city was estopped by its action from denying that the street was a public street, the defendant was not precluded by the former judgment from contesting in this case the question whether the place in question was a public street as between himself and the city.

That, assuming that the State had, at the time of the erection of the tram way, dedicated this portion of the bank to the use of the public as a street, yet before it could be held that a public street had been lawfully established an acceptance on the part of the city must be proved.

That there was no evidence of an acceptance until the grade was changed, and as an acceptance must be of the dedication as made, the city's acceptance, when made, was subject to the burden of the defendant's tram-way which then passed over it.

That the State could abandon its own claim, but could not without the defendant's consent, or upon compensation or by proceedings in which he might have an opportunity to be heard, extinguish his, and that the city occupied no better position than the State.

The city contended that the judgment in the former action was conclusive that it did not accept the street, subject to the obstruction, because if it had Sewell could not have recovered, as he was one of the public which had accepted the dedication and thus accepted its burden.

*Held*, that the answer to this was that the city was bound to keep its public streets in a reasonably safe condition for travel, and should not invite the public to use them before it had placed them in that condition.

APPEAL from a judgment in favor of the defendant, entered upon an order made at the Albany Circuit dismissing the complaint.

Prior to 1867 the defendant's grantor was the owner of certain premises on the north side of White street, in the city of Cohoes. These premises were bounded on the south by White street, and on the west by the lands of the Erie canal, belonging to the State.

In 1867 the State built a bridge across the Erie canal, at a point some 240 feet north of White street. To reach this bridge from White street it was necessary to pass over land which belonged to the State, lying between the lot of the defendant and the water of the Erie canal. In the year 1868 the firm of Morrison, Colwell & Paige, of which the defendant was a member, was using this lot for a coal yard, and in order to facilitate the unloading of coal from boats on the canal to their yard, they built a tram-way twelve feet above the road, over which the coal was wheeled and dumped into the coal yard.

In the year 1873, the common council of the city of Cohoes passed a resolution to pave White street, from Mohawk street to the bridge, and grade it from Main street to the bridge. When the street was graded and paved it was raised, under the tram-way, two feet, and after the paving the tram-way was ten feet above he street.

With the street and tram-way in this condition, one Leland Sewell attempted to drive a circus wagon along White street to the bridge. He was caught under the tram-way and seriously injured. In August, 1874, he sued the city of Cohoes and recovered, costs

HUN—VOL. XLII    28

and all, some $10,000, Morrison having notice of such suit. The city, after taking the case to the Court of Appeals, and being compelled to pay the judgment, in September, 1880, about six years and one month after the accident, brought this action against Morrison to recover the damages and expense of the suit with Sewell, claiming that he is liable for the judgment, counsel fees and other expenses.

*Matthew Hale*, for the appellant.

*Esek Cowen*, for the respondent.

LANDON, J. :

The city sued the defendant to recover the amount of a judgment which the city at the suit of one Sewell was compelled to pay him, because of the injury done to Sewell by a wrongful obstruction of the street, which obstruction was as between the city and Sewell, the act of the city. The city, upon the theory that this defendant was the author of the obstruction, gave the defendant notice of the action and requested him to defend it, but this he failed to do. The judgment-roll in the action between the city and Sewell was given in evidence in this action. To make that judgment conclusive evidence between the city and the defendant, the city must establish the fact that the defendant was the author of the act whereby Sewell was injured. (*City of Rochester* v. *Montgomery*, 72 N. Y., 65 ; *Village of Port Jervis* v. *First National Bank*, 96 N. Y., 556 ; *The Mayor of Troy* v. *Troy and L. R. R. Co.*, 49 N. Y., 657 ; *City of Chicago* v. *Robbins*, 2 Black., 418, and 4 Wall., 657.) If that fact was in issue and determined in the action of *Sewell* v. *The City*, then the judgment in that action would establish it here. But it was not in issue in that action. Sewell only sought recovery from the city, and it was not needful for him to establish that the defendant was the primary author of the act which injured him. At least an inspection of the judgment-roll in that action fails to disclose the existence of that issue, and it is not shown by evidence, *aliunde*, that it was therein determined. It was necessary, therefore, for the city to show by proof outside of the judgment-roll that the defendant was the author of the act injuring Sewell.

Now, the proof is that the defendant did erect over the bank of

the Erie canal, in 1868, the tram-way, between which and his great vehicle, Sewell was caught and crushed, in 1874. (See *Sewell* v. *Cohoes*, 75 N. Y., 45.) This canal bank was the property of the State upon which the public were accustomed to travel. There is no evidence that it was accepted as a public street by the city at the time this tram-way over it was erected. The tram-way was so erected as to leave twelve feet clear space between it and the surface of the canal bank beneath it. In 1873 the city appropriated the canal bank as a public street; whether rightfully or not, as between the city and the State, was immaterial to the issue between the city and Sewell. (75 N. Y., 45.) The city, assuming control and authority over the canal bank, graded and paved it, and in doing so raised its surface two feet, so that the twelve feet clear space beneath the tram-way was reduced to ten feet. The evidence tended to show that if there had been twelve feet of clear space Sewell would have escaped injury.

Upon these facts the city could not resist the conclusion that its acts caused this tram-way to be injurious to Sewell. It failed, therefore, to prove the facts necessary to bind the defendant, by the judgment, in favor of Sewell, unless the law charged the duty upon the defendant, when the city appropriated the canal bank as a public street, to remove the tram-way. The city had not, prior to Sewell's injury, required its removal.

The complaint in the former case alleged, and the answer denied, that the tram-way was over a public street. It is claimed in behalf of the city that that issue having been made and determined in the former action, is not open to inquiry here. But in order to Sewell's recovery, it was only needful for him, upon that issue, to show that as between himself and the city, the city was estopped by its action to deny that the street was a public street. The city raised the objection, upon the evidence in that action, that it had not been shown that the city had lawfully acquired and established the street; but it was held that it was not necessary to the plaintiff's recovery to proceed so far.

The Court of Appeals, in affirming the judgment, remarked that the city " cannot escape liability for the alleged reason that it had no control over it, and the land belonged to the State." (75 N. Y., 52.) It certainly accords with justice that the defendant here should be

allowed to contest an issue material to his defense in this case, namely, whether, in fact, the place in question was a public street, as between himself and the city. This issue, had he assumed the defense of the city in the former action, he could not have brought to a decision. The city was there estopped by acts in which this defendant had not participated.

The issue in the former action is broad enough either to cover the issue raised here or to exclude it. The issue determined is consistent either with a lawful or an unlawful act, as between the city and this defendant. The judgment, therefore, may or may not have determined the issue now raised by this defendant, and we cannot know, except by extrinsic evidence, whether it did or not. The judgment, therefore, leaves the issue open to further contention. To this effect are the authorities: *Russell* v. *Place* (94 U. S , 606); *Davis* v. *Brown* (Id, 423); *Cromwell* v. *County of Sac* (Id., 351); *Campbell* v. *Rankin* (99 id., 261); *Doty* v. *Brown* (4 N. Y., 71); *McKnight* v. *Devlin* (52 id., 399).

The judgment failing to show that the *locus in quo* was a public street, as between the city and the defendant, at the time the tramway was erected by the defendant, the construction of the evidence most favorable to the city is that after the tram-way was erected it accepted a dedication from the State. The city contests the conclusion that a street did not exist before the tram-way was erected. The evidence shows that the public had, before the erection of the tram-way, traveled over the canal bank at this point, in order to reach a bridge crossing the canal. Probably this travel was by the implied license of the State — a license revocable at pleasure. But if we assume a dedication by the State, we must find an acceptance by the city before we can hold that a public street was lawfully established, and there are no acts upon which to base an acceptance until the city entered and established a new grade. An acceptance must be of the dedication as made; the acceptance does not enlarge the dedication. When the acceptance was made it was of the street with the defendant's tram-way over it. The city accepted the dedication, subject to the burden. (*Fisher* v. *Prowse*, 110 Eng. Com. Law, 770; *State of New Jersey* v. *Society, etc.*, 15 Vroom., 502; *City of Oswego* v. *Oswego Canal Co.*, 6 N. Y., 257.)

The defendant, so far as appears from the evidence, was the

owner of the tram-way. The State could abandon its own claim, but could not without the defendant's consent, or upon compensation, or by proceedings, in which he might have an opportunity to be heard, extinguish his. The city occupied no better position, and it does not appear that before the injury to Sewell it desired to hold the street otherwise than in subjection to defendant's claim. The city contends that the judgment in the former action is conclusive that it did not accept the street subject to the obstruction, because if it had, Sewell could not have recovered, as he was one of the public which had accepted the dedication, and thus accepted its burden. The answer seems to be that the city is bound to keep its public streets in a reasonably safe condition for travel, and should not invite the public to use them before it had placed them in that condition.

The judgment should be affirmed with costs.

LEARNED, P. J., and BOCKES, J., concurred.

Judgment affirmed, with costs.