EDWARD R. SCHAFER, as Administrator, etc., of FRANZ SCHAFER, Deceased, Appellant, *v.* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Respondent.

*Land used as a street — liability of the city for an injury caused by a projecting manhole — contributory negligence in driving against it.*

Where a city allows land to be used as a street and holds it out to the public as such, it is bound to exercise the same degree of care as if the street had been formally laid out according to law, and must keep the street in a reasonably safe condition.

What acts on the part of the city present a question for the jury as to whether the particular case comes within this rule.

A city is chargeable with negligence where it allows a manhole to project at an unnecessary and improper elevation above the surface of a thoroughfare which is used as a street, although it has never been regularly paved and graded.

The driver of a heavily-laden truck, driving on an ungraded and uncompleted street, in which there were two obstructions within a distance of twenty feet, one a curbstone several inches in height, helping to form a gutter, and the other a manhole, which projected some six inches above the surface, in full view of these obstructions, drove his horses at a fast trot or gallop so that he struck the raised curb first with the front and then with the hind wheels of his wagon, and then struck the manhole, by the force of which collision he was thrown from his wagon and mortally injured.

*Held,* that the deceased was guilty of contributory negligence, and that his administrator could not recover from the city damages resulting from his death.

BARRETT, J., dissented upon the question of contributory negligence.

APPEAL by the plaintiff, Edward R. Schafer, as administrator, etc., of Franz Schafer, deceased, from a judgment of the Supreme Court

in favor of the defendant, entered in the office of the clerk of the county of New York on the 21st day of February, 1896, upon a dismissal of the complaint directed by the court after a trial before the court and a jury at a Trial Term of the Supreme Court held in and for the county of New York.

*Maurice Untermyer*, for the appellant.

*William H. Rand, Jr.*, for the respondent.

PATTERSON, J.

I entirely agree with the views expressed in the opinion of Mr. Justice BARRETT, respecting the relation of the city of New York to the projected thoroughfare called One Hundred and Twenty-seventh street, and the responsibility the city was under to keep that projected thoroughfare, which it permitted to be used as a street, in reasonably safe condition; and I also agree that leaving the manhole with the cover projecting, as it was, above the surface of the roadway, was the negligent allowance of an obstruction in a thoroughfare which the city permitted to be used as a street and for general street purposes. But I do not agree with the conclusion that the cause should have been left to the jury.

It is quite plain that the plaintiff failed to show affirmatively that the decedent Franz Schafer was free from contributory negligence in connection with the accident which resulted in his death; and it was incumbent upon the plaintiff in this action to make that proof. (*Weston* v. *City of Troy*, 139 N. Y. 281; *Whalen* v. *Citizens' Gas Light Co.*, 151 id. 70; N. Y. L. J., Dec. 4, 1896.) In making it the circumstances of the case may be shown, and it undoubtedly may be in many cases for the jury to infer from those circumstances that the sufferer from the accident was free from contributory negligence, and where two inferences may be drawn from the testimony or from the circumstances appearing in evidence, the question is for the jury. (*Chisholm* v. *State of N. Y.*, 141 N. Y. 246.) But in this case the circumstances are utterly insufficient to allow an inference that the decedent was free from negligence contributing to or inducing the accident. On the contrary, they all tend to show that, not only was he not free from negligence, but that he

was affirmatively guilty of negligence in the commission of the act or series of acts which led to his death.

On the day on which the accident occurred the decedent was driving a heavy truck, drawn by two large horses, and upon the truck was a load of from sixty-five to eighty filled beer kegs. He was on the way to deliver the truck load at a saloon, the approach to which was through One Hundred and Twenty-seventh street. It was necessary for him to cross a curbstone, which the witnesses speak of as forming the gutter on the east side of Second avenue. This curbstone extended upward, a distance variously stated at from two and a half to ten inches above the level of Second avenue. To the eastward and in the roadway of the projected One Hundred and Twenty-seventh street was the manhole referred to. It was located nineteen feet and two inches east of the curbstone, a distance not greater if as great as the length of the team and truck driven by the decedent. The decedent knew of the situation so far as the curbstone is concerned, and the manhole projecting above the surface of the street was plainly in sight. Knowing this situation, he drove his horses at a fast trot or gallop, turned them towards One Hundred and Twenty-seventh street, struck the curb, necessarily striking it twice, that is to say, both with the front wheels and with the hind wheels, and then seems to have struck the manhole, and we must assume from the evidence that he fell and was run over after striking the manhole. That the necessary effect of striking the obstruction of the curbstone with this heavily laden truck would be to jar it violently cannot be doubted, and it would seem to be of itself an act of pure recklessness to undertake to pass such an obstruction in such a way, and the effect of the jarring or oscillation of the truck upon the horses would be such that they could not draw the vehicle in a direct line and it might be thrown against the obstruction which the driver would not be able to avoid. This occurrence cannot be so split up as to make the accident attributable only to the existence of the manhole. There was the necessity of passing two obstructions within a space of twenty feet, that is to say, within the length, or less than the length, of the team and truck that was to be taken past these obstructions, and it cannot be said that the decedent is shown to have been free from negligence when he attempted to pass the first obstruction driving his horses

over it at a fast trot or gallop when there was another obstruction plainly in sight and so close that before the effect of striking against the first obstruction was overcome he was exposed to the risk of driving against the second one.

I think it is plain from the nature of this accident and the circumstances under which it happened that the court below was right in dismissing the complaint on the ground that freedom from contributory negligence on the part of the decedent was not shown and that the judgment should be affirmed, with costs.

VAN BRUNT, P. J., and WILLIAMS, J., concurred; RUMSEY, J., concurred in result; BARRETT, J., dissented.

BARRETT, J. (dissenting):

The action was brought by the plaintiff, as administrator, against the city of New York to recover damages resulting from the death of the plaintiff's intestate, Franz Schafer. The complaint, in substance, alleges that on the 2d day of September, 1894, One Hundred and Twenty-seventh street, between First and Second avenues, was a "public thoroughfare" in the city of New York; that on or about the said day the defendant negligently kept and maintained in the said street, near the southeasterly corner of Second avenue, about twenty feet from the intersection of Second avenue and One Hundred and Twenty-seventh street, a manhole projecting above the level of the roadway to a height of six inches or thereabouts, and that on the said date the deceased, Franz Schafer, was driving a team of horses attached to a wagon of great size and weight, which wagon was laden with barrels of beer, through One Hundred and Twenty-seventh street in an easterly direction, and that when he passed through the said street at the point before mentioned, one of the wheels of his wagon struck an obstruction caused by the wrongful projection of the aforesaid manhole, and that by the force of this collision the deceased was thrown from the wagon into the street and under the wheels, as a direct result of which he died that same day.

At the trial the plaintiff gave evidence tending to support these averments. Upon his resting a motion was made to dismiss the complaint upon the following grounds: "That no negligence has been shown on the part of the city; that the deceased is shown by the

proof to have been guilty of contributory negligence; that the proof fails to show that the deceased was free from contributory negligence, and that no notice to the city, either actual or constructive, has been shown of the condition of this manhole."

The motion was granted and the plaintiff excepted.

The defendant claims that the complaint was properly dismissed for the reason that the place where the accident occurred was not part of a public street. It appeared, however, that although One Hundred and Twenty-seventh street, between Second and First avenues had not actually been opened, regulated and graded as required by an act passed as far back as 1881 (Chap. 105, Laws of 1881), yet the street between those avenues had for many years prior to the accident been used by the public as an ordinary thoroughfare for vehicles and foot passengers. The street was lined with buildings, which were occupied for various purposes. The city had laid water mains through the street, and had placed hydrants and manholes there; and it was regularly patroled by the police. Under these circumstances it was at least for the jury to say whether the use of the locality as a street was permitted by the city. The rule is that where the city allows land to be used as a street, and holds it out to the public as such, it is bound to exercise the same degree of care as if the street had been formally laid out according to law, and to keep it in reasonably safe condition. (*Sewell* v. *City of Cohoes,* 75 N. Y. 45; *Phelps* v. *City of Mankato,* 23 Minn. 276; *Gallagher* v. *City of St. Paul,* 28 Fed. Rep. 305.) It was held in *Phelps* v. *City of Mankato* — and this case was cited with approval in *Sewell* v. *City of Cohoes* — that it is immaterial how a public street became such, whether by formal acceptance and official action of the city, *or by acceptance and use by the public,* so far as regards the duty of the city to keep it in safe condition.

The respondent concedes the rule to be as laid down in *Sewell* v. *City of Cohoes (supra),* but it insists that it is only applicable where the city has performed some acts with reference to the land which are appropriate to public thoroughfares — such as regulating, grading, lighting or paving the street, or building gutters, curbs and sidewalks upon it. But if the city had done these things it would, in effect, by its official action, have opened the street, and there

would be no point in invoking the rule to which we have referred. The rule applies where these things have not been done, namely, where the thoroughfare is used by the public without dissent from the city, and where the surroundings indicate an invitation to such use.

Here the city clearly suffered the public to treat the land as an ordinary street. True, it did not break down or remove the curb-stone which crossed Second avenue. But it knew that the land was used and occupied as a street, and that for years vehicles were being driven over this very curbstone into and through the land so occupied as a street. It policed the land as an occupied street. It laid its water mains through it and placed its hydrants thereon. To all practical intents and purposes it was a regular thoroughfare, and it was certainly competent for the jury to say, upon all the evidence, that it was held out by the city as such a thoroughfare.

The next ground upon which the nonsuit is sought to be upheld is that the placing of the manhole in the street and its manner of construction were matters within the discretion of the city authorities, for which the city is not liable. We do not think that the manhole in question was within the rule with regard to quasi-judicial duties imposed upon public officers. It was not a part of a system of improvements. The city officials had for years neglected to make these improvements, although required to do so by law. This manhole and the neighboring hydrant were mere preliminaries to the contemplated improvement. The manhole was placed where and as it was with reference to subsequent formal action under the law. It was probably intended ultimately to be on a level with the regularly graded street. In the meantime, however, it was a dangerous obstruction, and the city should either have reduced it to the level of the land or closed the apparent thoroughfare. Such a construction stands upon the same footing as a hydrant or other similar convenience. It should have been properly constructed and properly placed. City officials certainly have no quasi-judicial or discretionary authority to place a dangerous and unnecessary obstruction in what is a practical highway, and thus jeopardize the lives of our citizens. Even in the hydrant case of *Ring* v. *City of Cohoes* (77 N. Y. 83) the liability of the city for negligent construction or negligent placing of the hydrant was not questioned. The question

of negligence pure and simple was discussed by Judge EARL. He absolved the city, not because the construction was a matter of discretion, but because the hydrant was properly constructed as matter of fact, and was properly placed where it was in the curb. But suppose it had been placed in the middle of the street and then an accident had occurred, would it not have been treated as a nuisance? Or, at least, would there not have been a question of negligence for the jury? "A hydrant," said Judge EARL, "answers a useful and necessary purpose, and it is required to be placed *somewhere in the street;* and when the public authorities determine to place one in the curb, it cannot be said that they have done a negligent act. * * * It is true that in a city *the whole roadway* must generally be kept suitable for travel. But the gutter is not properly for travel. It is made for another purpose." There was evidence in the present case from which the jury might fairly have found that the manhole in question was placed at an unnecessary and improper elevation above the surface of the street; and that it was so placed years before by the city authorities. We think, therefore, that the question of the city's negligence should properly have been submitted to the jury.

The only other question calling for special consideration is whether the plaintiff made out a case of freedom from contributory negligence upon the part of his intestate. It is contended in this connection that the weight of evidence favors the conclusion that the deceased lost his balance and fell from his seat at the moment when the truck was jolting over the easterly curbstone of Second avenue. The claim is, that the deceased then fell upon the pole of the truck, and that he only fell from the pole to the street when the manhole was reached. This point was not specially taken upon the motion to dismiss, and was not referred to by the learned trial judge in the reasons assigned for the granting of that motion. We do not, however, deem the point to be crucial. There was certainly some confusion in the testimony of the various witnesses to the occurrence, but upon a full consideration of that testimony we think the question as to the precise moment when the deceased finally fell was fairly for the jury, and that there was no such preponderance against the plaintiff's theory as would have justified the direction of a verdict for the defendant upon that ground. These observations

equally apply to the general question of contributory negligence. All that can be said is that the occurrence happened in the daytime, and that the obstruction might, or might not, have been observed by a careful driver. Even an ordinarily watchful driver might not have kept a special lookout for unusual and exceptional obstructions. We think the jury might here have inferred the absence of contributory negligence from the circumstances disclosed. Or they might have inferred contributory negligence. Where two inferences may reasonably be drawn from the testimony of witnesses, and the nature of the accident, the question is for the jury. (*Chisholm* v. *The State of New York,* 141 N. Y. 246.)

The judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

Judgment affirmed, with costs.