FAUST v. CITY OF CLEVELAND.

(Circuit Court of Appeals, Sixth Circuit. April 15, 1903.)

No. 1,100.

1. NAVIGABLE WATERS—SUPERVISION BY CITY—OHIO STATUTE.

Rev. St. Ohio 1892, § 2640, providing that the councils of cities shall have the care, supervision, and control of "all public highways, streets, avenues, alleys, sidewalks, public grounds and bridges within the corporation, and shall cause the same to be kept open and in repair," does not impose the duty upon a city of keeping a navigable river within its

limits free from obstructions; such river not being a "highway," within the meaning of that word as used in the statute.

2. SAME—INJURY FROM OBSTRUCTION—LIABILITY OF CITY.

A municipal corporation cannot be held liable for an injury to a vessel arising from an obstruction in a navigable stream within its limits unless the duty to keep the stream free from such obstructions is positively imposed on the corporation by statute. Such duty is one which rests primarily upon Congress and the state, and is of a governmental character, performance of which cannot be coerced by an individual; and the fact that the corporation has voluntarily assumed to exercise supervision over the stream does not bind it to continue the same, or render it liable for a marine disaster resulting from its failure to do so.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio.

This is a libel in personam against the city of Cleveland, a municipal corporation of the state of Ohio. The libelant is the owner of the steam tug Crown Prince, which came into collision with a snag or other submerged obstruction in that part of the navigable river Cuyahoga, lying within the corporate limits of the municipality, and constituting a part of the harbor, and was sunk and totally lost as a consequence. It is averred that the municipality was under a duty to keep the harbor or river within its limits free from such obstructions, and that it had for a long time prior to the loss of the libelant's vessel exercised control and supervision over the river where the disaster complained of happened. It is also averred that the municipality had notice of this particular obstruction, and time to remove same, before the collision complained of. The libel contains the usual averments as to the equipment and negligence of the Crown Prince. The respondent excepted upon the ground that it was under no legal duty to keep the river clear, and was not legally responsible for the loss of the libelant's tug. The exception was sustained, and the libel dismissed. Libelant has appealed.

Benjamin A. Gage, for appellee.

Before LURTON and SEVERENS, Circuit Judges, and COCHRAN, District Judge.

LURTON, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

There is no averment that the city either caused or contributed to the creation of the obstruction in the river. If, therefore, it is liable to the libelant, it is because it was under some positive duty to remove the submerged object when notice was received of its existence. The argument for libelant is that the river within the limits of the city is a "highway," within the meaning of section 2640, Rev. St. Ohio 1892, defining the duties of Ohio municipalities. It is as follows:

"The council shall have the care, supervision and control of all public highways, streets, avenues, alleys, sidewalks, public grounds and bridges within the corporation, and shall cause the same to be kept open and in repair, and free from nuisance."

That the river is a highway for the passage of vessels engaged in foreign and interstate commerce, as well as domestic traffic, is true; but that that part of the river Cuyahoga which happens to be within the corporate limits of the city of Cleveland is one of the highways in the sense that its streets and alleys and roads are so as to charge it with the duty of keeping it safe for navigation by removing ob-

structions is not properly to be inferred from the section cited. The word "highway" is a very broad term, and may, as a generic word, include every possible thoroughfare. Thus, as noticed by the court below, a railroad is a highway; and, if the word as used in this Ohio statute is to be regarded as used in its broadest sense, the railroads within the city would likewise fall within the care of the city—a result quite absurd, as all must confess. Plainly, the word "highway" is to be understood as applying to such highways as customarily fall within the care and supervision of cities and towns, and the words following, "streets, avenues, alleys, sidewalks, public grounds and bridges," must be taken as limiting the meaning of "highways." The learned trial judge properly placed this interpretation upon the statute, saying:

"I think we should properly read into the statute the words 'such as,' after 'highways'; the designations following being explanatory of the term 'highway.'"

Neither do the other sections of the Ohio Revised Statutes, concerning the control of the shores and banks of lakes and rivers, and providing for the appointment of harbor masters for the purpose of regulating navigation within the city, impose the duty of regulating the depth of water or removing obstructions.

The river Cuyahoga is a navigable river, and, as such, is subject to the control of Congress, and to its regulations and general supervision. But the interest of the state in its own domestic commerce is such that the regulation of Congress is not necessarily exclusive of all control or authority by the state. It has therefore been held that legislation by the state for the purpose of aiding commerce by the improvement of such streams by providing for the deepening of the channel or the removal of obstructions does not encroach upon the power of Congress, if not in conflict with any system for their improvement provided by the Congress. County of Mobile v. Kimball, 102 U. S. 691, 26 L. Ed. 238. In the case cited above, a law of Alabama which provided for the deepening of the harbor of Mobile at the expense of the county of Mobile was held valid; the court regarding the state as having authority to impose the duty of improving and caring for such a navigable body of water within the state upon one of its municipal corporations within whose limits the harbor lay. But this duty of providing for the safe navigation of rivers is a duty which rests upon the United States and upon the state. It is not a duty which can be enforced by an individual. It belongs, plainly, to the sphere of the governmental duties of imperfect obligation. The federal government or the state government may voluntarily assume it, or the latter may impose it upon one of its municipalities to the extent that such waters are within the municipal limits. That no such duty is imposed by common law is plain. In Seaman v. Mayor of New York, 80 N. Y. 239, 36 Am. Rep. 612, and Coonley v. City of Albany, 132 N. Y. 145, 30 N. E. 382, it was held that, while a river is a highway for the passage of vessels, that portion of it which happens to be embraced within the boundaries of a city is not one of its highways, so as to burden it with the duty of removing obstructions and keeping it safe for navigation.

Liability to respond in damages to any one sustaining injury through neglect to comply with a statute affirmatively imposing the duty to keep a navigable river clear of obstructions within the limits of the municipality may be conceded, by analogy to the liability ordinarily resulting from neglect to keep a street or road in repair when the duty is imposed by a statute or the charter of the city. The case of Winpenny v. City of Philadelphia, 65 Pa. 135, is an instance of liability under a statute which affirmatively required the city to keep the river within its limits free from obstruction. But the Supreme Court of Pennsylvania placed the liability upon the plain and unmistakable terms of the statute; declaring very emphatically that no liability would exist, but for the unmistakable language of the statute. But when so unusual a responsibility is sought to be imposed upon a municipal corporation, there ought to be a very plain expression of the will of the state that the duty of maintaining the river free from obstruction should be assumed by the municipality.

In Coonley v. City of Albany, 132 N. Y. 145, 151, 30 N. E. 382, 383, the court, speaking by Parker, J., said:

"It seems to be clear, however, that in order to charge the municipality with the duty and burden of improvements primarily existing in the general and state governments, which they can perform, or not, as the wisdom of Congress or the Legislature may suggest—a determination which could not be directed or interfered with by the courts at the instance of the complaining party—it must appear from the act alleged to contain the requirements that it was the intention of the Legislature to place upon the municipality the burden of doing all that the state should have done, and more than it could be required to do."

It follows from the view we have expressed that liability can only result from neglect of a duty plainly imposed, and that the mere voluntary acts of the city in removing obstructions from the river created no obligation to continue such acts. Being voluntary, the city was free to desist when it saw fit, and no one has the right to maintain any action for failing to do that which it was under no legal obligation to do. But it is said that, even if the city was under no legal obligation to keep the river clear of obstruction, the fact that the city had theretofore "exercised supervision and control over the said river at the place of disaster, and within its corporate limits, through its public works department," created a liability to any one injured through its negligence in the execution of the supervision thus voluntarily assumed. In support of this, appellant cites Mayor v. Sheffield, 4 Wall. 189, 18 L. Ed. 416; Manchester v. Ericsson, 105 U. S. 347, 26 L. Ed. 1099; Sewell v. Cohoes, 75 N. Y. 45, 31 Am. Rep. 418; and other cases to same import. The cases cited are all cases in which it is held that if a public municipality treat a place as a street by laying it off as such, or by working upon it, or by doing other acts showing an intent to hold it out as a public street, it will not be permitted to deny liability to one injured by negligence in repair of such a place. Now, in the class of cases referred to, there was imposed by statute upon the city the power or the duty of opening and maintaining public streets. The liability to one injured by the failure to keep the street in repair arises at common law out of the breach of the duty so imposed. Cardington v. Fredericks'

Adm'r, 46 Ohio St. 442, 21 N. E. 766; Cleveland v. King, 132 U. S. 295, 302, 10 Sup. Ct. 90, 33 L. Ed. 334; Barnes v. Dist. of Columbia, 91 U. S. 540, 547, 23 L. Ed. 440; City of Circleville v. Sohn, 59 Ohio St. 285, 52 N. E. 788. The duty to keep streets and other like highways in repair and free from obstruction being imposed by law, the city is estopped to deny that a particular way or thoroughfare is a street, within the scope and sphere of its control, if in point of fact it has dealt with it as a street. The bearing of this class of cases upon the question at bar is slight. Here no general duty of keeping rivers or other navigable waterways is imposed by law. The duty to care for such thoroughfares rests upon the Congress and state, and is a duty of a governmental character, which cannot be coerced by an individual. If assumed by either, no one has a right to demand or expect a continuance of such supervision. The general principle is that, in order to charge a municipal corporation with negligence in the performance of a public work, the neglect must be in respect of some duty or authority imposed or conferred by law. Mayor of Albany v. Cunliff, 2 N. Y. 165. The distinction between liability for negligence in respect of a matter beyond the scope of the duty of the municipality, and neglect in respect of a matter altogether within the general sphere of duties imposed, is touched upon in Sewell v. Cohoes, 75 N. Y. 45, 31 Am. Rep. 418, where the case of Albany v. Cunliff is distinguished. We know of no principle of maritime law by which a municipality is responsible for the navigable character of the waterways within its limits, or by which, if it voluntarily assumes to exercise control and supervision over such navigable waters, it must ever afterward continue such supervision, under penalty of liability for every marine disaster attributable to neglect of such supervision. To hold the city, appeal must be made to the common law, rather than to rules in respect of maritime torts. We fail to see any conflict between the rules of liability under the maritime law and those administered under the common law. · We see, therefore, no applicability of the case of Workman v. The City of New York, 179 U. S. 552, 21 Sup. Ct. 212, 45 L. Ed. 314, where a plain liability under the maritime law was sought to be evaded by refuge in the local law.

Judgment affirmed.