612 So.2d 1010 (1993)
Carolyn B. SUMRALL, Plaintiff-Appellee,
v.
Mickey H. SUMRALL, Defendant-Appellant.
No. 24296-CA.
Court of Appeal of Louisiana, Second Circuit.
January 20, 1993.
Rehearing Denied February 18, 1993.
*1012 Napper, Waltman, Madden & Rogers by R.H. Madden, III, Ruston, for appellant.
Hodge O'Neal, Baton Rouge, for appellee.
Before MARVIN, SEXTON and HIGHTOWER, JJ.
SEXTON, Judge.
In this personal injury action, the defendant, Mickey Sumrall, appeals the judgment notwithstanding the verdict (JNOV) rendered by the trial court in favor of the plaintiff, Carolyn Sumrall. The jury had found the defendant liable for plaintiff's injuries and awarded her $4,000 in special damages and $1,000 in general damages. The trial court granted plaintiff's motion for JNOV, increasing her award to $11,910.65 in special damages and $30,000 in general damages. We affirm.
On August 23, 1987, while a judicial separation/divorce proceeding was pending between Mr. and Mrs. Sumrall, Mr. Sumrall went to the residence of Dan Babin, a man with whom Mrs. Sumrall was having an affair. Mr. Sumrall was accompanied by Arthur "Oscar" Atkins, a life-long friend/family employee. Both Mr. Sumrall and Mr. Atkins were armed with handguns. Without announcing his presence, Mr. Sumrall kicked open the front door of Mr. Babin's apartment. Mr. Babin quickly fled. Mr. Sumrall then kicked open a bedroom door where he found Mrs. Sumrall, and an altercation ensued. According to Mrs. Sumrall's testimony, Mr. Sumrall began beating her with both fists, including the hand holding a .357 Magnum revolver, and kicking her when she fell. Sergeant William T. Davis of the Ruston Police Department, the investigating officer following the altercation, provided corroboration for Mrs. Sumrall's testimony. Sergeant Davis testified that, during questioning, Mr. Sumrall admitted to striking Mrs. Sumrall several times and that he struck her with the hand holding the gun.
However, according to the testimony of Mr. Sumrall and Mr. Atkins, Mr. Sumrall never struck Mrs. Sumrall; instead she initiated the contact which caused both Mr. and Mrs. Sumrall to fall. Mr. Sumrall's theory was that any injury sustained by Mrs. Sumrall occurred accidentally as a result of her striking a dresser or a mirror when she fell. At some point, Mr. Sumrall's gun discharged, although nobody was struck by the bullet. Mr. Sumrall and Mr. Atkins then left the scene.
Mrs. Sumrall received emergency room treatment for the injuries she received. Three sutures were needed to close a laceration on her scalp. She also had swelling and discoloration of her nose and right cheek. Nine days later, Mrs. Sumrall sought medical treatment for headaches, dizzy spells, and nausea, all of which were diagnosed as symptoms of a cerebral concussion syndrome. She has also been found to have a deviated nasal septum, misaligned nasal bone, and a flattening or indentation to her right cheekbone. She has further been diagnosed as suffering from posttraumatic stress disorder.
Following trial, responses to jury interrogatories revealed that the jury found Mr. Sumrall had not committed an intentional act which was a legal cause of Mrs. Sumrall's injuries. However, the jury found that Mr. Sumrall was negligent and that his negligence caused Mrs. Sumrall's injuries. Mrs. Sumrall was not found to have been the aggressor and thus was not found to have contributed to her own injuries. Mr. Sumrall was thus totally liable for Mrs. Sumrall's injuries which the jury assessed at $1,000 for past and future mental anguish and emotional distress and $4,000 for past medical expenses. No damages were awarded for past and future pain and suffering, future medical expenses, or permanent impairment.
Plaintiff moved for JNOV or, in the alternative, a new trial. The trial court granted the JNOV. First, the trial court *1013 found that reasonable persons could only conclude that Mr. Sumrall had committed an intentional act rather than one of negligence. Further, the trial court found that the jury's decision as to damages, both special and general, was unreasonable. The trial court found that Mrs. Sumrall clearly was entitled to the entirety of her past medical expenses, $5,210.65, plus $6,700.00 in future medical expenses to correct the deviated septum and the depressed cheekbone. Further, the trial court awarded $30,000.00 in general damages for past and future physical pain and suffering and past and future mental anguish and emotional distress. A judgment was accordingly rendered ordering Mr. Sumrall to pay Mrs. Sumrall $41,910.65. Mr. Sumrall appeals that judgment.
On appeal, defendant initially argues that the trial court was in error in granting the JNOV as to liability by finding the defendant's actions to have been intentional rather than negligent. Regardless of whether plaintiff's damages were caused intentionally, as found by the trial court, or negligently, as found by the jury, with no comparative negligence on the part of plaintiff (a finding not challenged by defendant), defendant is, under either theory, liable for the entirety of plaintiff's damages. This issue is therefore irrelevant.
The real issue on appeal is whether the trial court erred in granting JNOV on the issue of damages. Under LSA-C.C.P. Art. 1811, a JNOV is appropriate when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court finds that reasonable men could not arrive at a contrary verdict. A motion for JNOV should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not have reached a different conclusion. If there is evidence opposed to the motion for JNOV of such quality and weight that reasonable and fair-minded men, in the exercise of impartial judgment, might reach different conclusions, the motion should be denied. Anderson v. New Orleans Public Service, Inc., 583 So.2d 829 (La.1991); Scott v. Hospital Service District No. 1 of Parish of St. Charles, 496 So.2d 270 (La. 1986).
In considering a motion for JNOV, the trial court should not evaluate the credibility of witnesses, nor substitute its own reasonable inferences of fact for the jury's as long as reasonable inferences can be made to support the jury's verdict. All reasonable inferences or factual questions should be resolved in favor of the non-moving party. Anderson v. New Orleans Public Service, Inc., supra; Brantley v. General Motors Corporation, 573 So.2d 1288 (La.App. 2d Cir.1991), writ denied, 577 So.2d 17 (La.1991).
A JNOV is a procedurally correct device for raising or lowering an unreasonable damage award. LSA-C.C.P. Art. 1811 F; Lilly v. Allstate Insurance Company, 577 So.2d 80 (La.App. 1st Cir.1990), writ denied, 578 So.2d 914 (La.1991). When a trial court has determined that a JNOV is warranted because reasonable men could not differ on the fact that the award was either abusively high or abusively low, it must determine what is the proper amount of damages to be awarded. In making this determination, the trial court is not constrained as are the appellate courts to raising (or lowering) the award to the lowest (or highest) point reasonably within the discretion afforded that court. See Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). Rather, the trial court should render a de novo award of damages based on its independent assessment of damages. Anderson v. New Orleans Public Service, Inc., supra; Rickerson v. Fireman's Fund Insurance Company, 543 So.2d 519 (La. App. 1st Cir.1989).
However, in reviewing a trial court's grant of a JNOV as to damages, an appellate court, if it first determines the JNOV was properly granted, i.e., that reasonable men must find that the jury award was an abuse of discretion, must then examine the trial court's award of damages under the appellate constraints of Coco v. Winston Industries, Inc., supra. Anderson v. New Orleans Public Service, Inc., supra.
*1014 Considering special damages, the jury awarded plaintiff $4,000 in past medical expenses; nothing was awarded for future medical expenses. Medical expenses are a proper item of damages. Thames v. Zerangue, 411 So.2d 17 (La.1982). A jury is in error for failure to award the full amount of medical expenses proven by a victim. Andres v. Liberty Mutual Insurance Company, 568 So.2d 651 (La.App. 3rd Cir.1990). A tortfeasor is even required to pay for overtreatment or unnecessary treatment unless such treatment was incurred by the victim in bad faith. Starnes v. Caddo Parish School Board, 598 So.2d 472 (La.App. 2d Cir.1992); Temple v. Shannon, 505 So.2d 798 (La.App. 2d Cir.1987). Future medical expenses are likewise a legitimate item of damages. Guillory v. Avondale Shipyards, Inc., 448 So.2d 1281 (La.1984); Nichols v. Stone Container Corporation, 552 So.2d 688 (La.App. 2d Cir.1989), writ denied, 556 So.2d 1262 (La. 1990).
The plaintiff submitted the following medical bills into evidence: $263.45 for emergency treatment at the Lincoln General Hospital; $30.00 for the December 12, 1988 examination by Dr. James C. McDonald, a plastic and reconstructive surgeon; $4,545.00 for treatment of the posttraumatic stress disorder by Dr. Paul D. Ware's office; $170.00 for examination and treatment at the Green Clinic by Drs. Samuel P. Robinson, a facial plastic surgeon, and Temple Douglas, who practices internal medicine; and $202.20 in pharmacy bills for prescription medication. The total amount of past medical expenses is $5,210.65. In light of the clear evidence of these expenses and the absence of any reasonable basis for finding these expenses were not related to the August 23, 1987 incident, the jury award of only $4,000.00 in past medical expenses was unreasonable. Accordingly, the trial court properly granted the JNOV and awarded plaintiff the full $5,210.65 in past medical expenses.
The trial court also granted the JNOV to award $6,700.00 in future medical expenses. This award was based on the trial court's finding that plaintiff would require future surgery to repair her deviated septum, misaligned nasal bone, and depressed cheekbone. Defendant argues that the jury's verdict implicitly rejected the notion that these injuries were caused by the August 23, 1987 incident, a finding that defendant claims is reasonable in light of the evidence presented at trial. We disagree.
This incident resulted in plaintiff's emergency room treatment on the date of the incident, August 23, 1987. Lincoln General Hospital medical records reveal that plaintiff had swelling and discoloration of the nasal bridge and the right zygoma (cheek) area. Dried blood was found in her left nasal passage. Her nose and right cheekbone are the same areas in which plaintiff seeks reconstructive surgery. Plaintiff's injuries were such that she was diagnosed nine days following the incident as suffering from a cerebral concussion syndrome. At that time, Dr. Temple Douglas noted that plaintiff still had a large bruise under her right eye.
Both of the plastic surgeons, Drs. Robinson and McDonald, testified that plaintiff's injuries could have been caused by trauma. Dr. Robinson stated that such injuries were compatible with the beating inflicted by defendant as described by the plaintiff. Although acknowledging that a deviated septum can often be congenital, Dr. Robinson unequivocally stated that a depressed cheekbone was not congenital, but the result of trauma. Further, based on his examination, Dr. Robinson estimated that the injury to the cheekbone had occurred in August 1987, plus or minus three to four months. The plaintiff's testimony that her nose and cheek problems were caused by the August 23, 1987 incident and did not preexist that date is uncontradicted. Importantly, we note that there is no defense evidence that plaintiff had any nose or cheek problems prior to August 23, 1987.
Additionally, defendant's argument that plaintiff only saw the plastic surgeons for trial purposes, not for treatment, is unsupported by the record. Plaintiff saw Dr. Robinson on December 1, 1987, less than four months after the incident. Although *1015 plaintiff did not see Dr. McDonald until December 12, 1988, some 15 months after the accident, this was still significantly prior to the trial of this matter on September 24-27, 1991. The plaintiff reasonably explained that she only went to see Dr. McDonald after Dr. Robinson had moved out of the area.
Defendant finally argues that, as the proposed surgeries are merely elective surgeries, the jury could properly refuse to award plaintiff such future medical expenses. As previously noted, the defendant would be liable for even unnecessary medical treatment in the absence of a showing that such would be incurred by the plaintiff in bad faith. There has been no showing of bad faith on the part of the plaintiff. Although not medical necessities, the surgical procedures are compensable expenses engendered by defendant's actions. We therefore find that the jury was not reasonable in failing to award future medical expenses, and the trial court properly granted the JNOV as to this issue.
We further find the amount awarded by the trial court for the future medical expenses was not an abuse of discretion. Dr. Robinson testified that he would recommend surgery to repair plaintiff's nose and a series of collagen injections to repair the cheekbone. Surgery, including the surgeon's fee, anesthesia, and the hospital fee, would be $3,040. The collagen treatments would be an additional $500 to $600. Dr. Robinson, therefore, estimated a total of $3,540 to $3,640 to repair plaintiff's injuries. Dr. McDonald would correct both the nose and the cheekbone with two separate surgical procedures, with a total cost of $8,700. The trial court's award of $6,700 in future medical expenses is between the two estimates and is not an abuse of discretion.
The final issue is the trial court's JNOV award of $30,000 in general damages, comprising damages for past and future physical pain and suffering together with past and future mental anguish and emotional distress. The jury had awarded $1,000 for past and future mental anguish and emotional distress, but had refused to make any award for past and future pain and suffering. In essence, the jury award must be considered a finding that defendant's actions injured plaintiff, necessitating medical expenses and causing mental and emotional damages, but not causing plaintiff any physical pain or suffering. The jury verdict was clearly inconsistent with the evidence.
Where, as here, the jury has awarded special damages for medical expenses, but failed to make an award of general damages, there has been an error of law. Accordingly, a trial court may properly grant a JNOV. Brantley v. General Motors Corporation, supra; Loveday v. Travelers Insurance Company, 585 So.2d 597 (La.App. 3rd Cir.1991), writ denied, 590 So.2d 65 (La.1991).
In the emergency room shortly after the incident, plaintiff was found to have suffered significant injuries. She was observed to have swelling and discoloration of the face and three sutures were required to close a scalp laceration. Nine days after the incident, plaintiff was diagnosed as having suffered cerebral concussion syndrome after complaints of continued, frequent headaches, dizzy spells, and nausea. Additionally, plaintiff has been diagnosed as suffering from posttraumatic stress disorder and has received counseling for that disorder from October 1987 through the trial. Finally, plaintiff will apparently seek treatment to correct her nasal and cheek abnormalities, which would either require two surgical procedures or one surgical procedure and a series of collagen injections. The nasal surgery, the procedure apparently having more consequential effects on the patient, would involve inserting packing into and putting a cast on the nose. The packing would be removed 24 hours after the surgery and the cast after one week. A typical patient has swelling and bruising for about three weeks and drainage out of and down the back of the nose for several days. A patient would have "moderate" pain for two to three days and the nose would heal to pre-surgery strength in approximately six weeks.
Clearly, plaintiff has suffered physical pain and suffering from defendant's actions. *1016 Her mental anguish and emotional distress, as evidenced by her treatment for posttraumatic stress disorder, has been of a significant duration. Additionally, she will certainly experience further pain and suffering as the result of future medical treatment to repair her nasal and cheek problems, also caused by defendant's actions. In light of these protracted problems, we find no abuse of discretion in the trial court's JNOV award of $30,000 in general damages, encompassing past and future pain and suffering and past and future mental anguish and emotional distress.
For the above and foregoing reasons, we find that the trial court properly granted the JNOV. The damages assessed are not an abuse of discretion. Accordingly, the judgment appealed from is affirmed at defendant's costs.
AFFIRMED.

APPLICATION FOR REHEARING
Before MARVIN, SEXTON, HIGHTOWER, VICTORY and WILLIAMS, JJ.
Rehearing Denied.