654 So.2d 1355 (1995)
Jules USÉ
v.
Paul USÉ, State Farm Mutual Insurance Company, and Shell Oil Company, Inc.
No. 94 CA 0972.
Court of Appeal of Louisiana, First Circuit.
April 7, 1995.
As Corrected on Limited Grant of Rehearing June 6, 1995.
Rehearing Denied June 21, 1995.
*1358 David B. Allen, Houma, for plaintiff-appellee Jules Usé.
David J. Norman, Houma, for plaintiff-appellant Todd Usé.
Joseph L. Waitz, Houma, for plaintiff-appellant Paul Usé.
William Brockman, New Orleans, for defendant-appellant Shell Oil Co.
Leon A. Crist, Metairie, for defendants-appellees H-Bar-H, Wylie Resources, and Boston Old Colony Ins.
Lloyd T. Bourgeois, Labadieville, for defendants-appellees Paul Usé and State Farm.
Alfred J. Gould, New Orleans, for defendant-appellee Union Texas Petroleum.
Salvadore J. Pusateri, New Orleans, for defendant-appellee Halliburton Co.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
SHORTESS, Judge.
This appeal arises out of a boating accident which occurred during a late night frogging trip. Todd R. Usé, Paul Usé, Jules Usé and Chris J. Lirette (plaintiffs) were frogging about 1:00 a.m., August 12, 1990, in a fifteen-foot aluminum boat when they struck the piling of an abandoned oil well. The boat took on water from the rear and sank. Plaintiffs fell into the water, then climbed onto the tops of the pilings where they spent the rest of the night. At daylight, Paul swam to the opposite bank and eventually returned with rescue help. Initially, Jules and Todd Usé and Chris Lirette sued Shell Oil Company, Inc. (defendant), Paul Usé, as owner and operator of the vessel, and State Farm Fire & Casualty Company (State Farm), Paul's insurer. Paul Usé sued defendant. The cases were consolidated for discovery and trial. After discovery, H-Bar-H, Inc., and Wylie Resources, Ltd. (the landowners), and their insurer, Boston Old Colony Insurance Company (Boston), were added as defendants. Defendant subsequently filed a third party demand against Union Texas Petroleum Energy Company (UTP). Plaintiffs later amended to add UTP as a direct defendant. Defendant also asserted cross-claims against Paul Usé, State Farm, and the landowners for tort indemnity or contribution. The landowners and Boston, likewise, asserted a third-party demand against UTP and cross-claims against Paul Usé and State Farm. Defendant, the landowners, State Farm, and UTP, at one time or another, all requested trial by jury. The requests were denied and after a bench trial, the court found defendant 45%, the landowners 45%, and Paul Usé 10% at fault in causing the accident. Judgments of the following were rendered:

Jules Usé: $377,035.73
Chris Lirette: $356,594.66
Todd Usé: $101,035.05
Paul Usé: $ 75,879.72

All claims against UTP were dismissed, as were all claims by spouses for loss of consortium.[1] Defendant, Todd Usé and Paul Usé appealed.

A. Liability
Defendant has assigned numerous errors to the trial court. At the outset, we find that the trial court's factual findings were not clearly erroneous. The trial court painstakingly reviewed the voluminous testimony, including depositions submitted in lieu of live testimony. A review of the record shows the trial court should be commended for its thorough and fair review of the facts. The specific factual findings made by the court were clearly permissible and supported by the record. If there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or *1359 clearly wrong. Stobart v. State, 617 So.2d 880, 883 (La.1993).
Therefore, we find the trial court did not err in holding that the accident occurred because the pilings were left by defendant, or that the piling plaintiffs struck was a hazard to navigation.
Defendant contends the trial judge could not have found it responsible under general maritime standards of liability. Under the general maritime law, a party's negligence is actionable only if it is a "legal cause" of the plaintiff's injuries. Legal cause requires that the negligence be a "substantial factor" in the injury. Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646 (5th Cir.1992) (citations omitted).[2]
Defendant's negligence in leaving the pilings and well casing protruding out of the water as an obstacle to navigation was a substantial factor in causing plaintiffs' accident. If defendant had cut the casing and removed or cut the pilings to the mud line, or, at a minimum, marked the pilings with reflectors, the accident could have been avoided. The record supports a finding of liability based on general maritime negligence. For the same reasons, the record supports a finding of liability based on state law principles of negligence.

B. Applicability of 33 U.S.C. § 403
Defendant claims Title 33, United States Code, section 403, does not apply to pilings, and, therefore, does not apply to this case. This federal statute, enacted in 1890, generally prohibits obstructions in navigable waterways without express permission from the Army Corps of Engineers. The statute lists a number of obstructions which are prohibited, including "other structures." The list is not exclusive, and determination of whether an object is an obstruction is a question of fact. The term "obstruction" is given broad interpretation in favor of free and open navigation. United States v. Rio Grande Dam & Irrigation Co., 174 U.S. 690, 708, 19 S.Ct. 770, 777, 43 L.Ed. 1136 (1899); Bordelon v. T.L. James & Co., 380 So.2d 226, 229 (La.App. 3d Cir.1980).
The pilings and the well casing were left protruding at least six inches above the water line. No great stretch of imagination is necessary to decide this was an obstruction to navigation. The trial court was not clearly wrong in making this factual determination. Defendant also points out it was never prosecuted by the federal government for violation of the federal law. However, the record shows defendant never sought a permit from the Army Corps of Engineers to erect the structure, which is in itself a violation of the federal law. Some courts have imposed a presumption of negligence per se when a moving vessel strikes a stationary object which is a hazard to navigation and when the object violates a law designed to prevent collisions. Board of Com'rs of Port of New Orleans v. M/V Agelos Michael, 390 F.Supp. 1012 (E.D.La.1974).[3]

*1360 C. Continuance
Defendant contends the trial court erred in denying Defendant's motion to continue the trial and reopen discovery in light of newly discovered evidence of fraud on the part of plaintiffs and the unavailability of certain witnesses.
Granting a continuance is mandatory: if at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the continuance.
La.C.C.P. 1602. A trial court has discretion to grant a continuance in any case if there are good grounds therefor. La.C.C.P. art. 1601. In determining whether to grant a continuance, the trial court should consider diligence, good faith, and reasonable ground. Premier Bank, Nat'l Ass'n v. Robinson, 618 So.2d 1037, 1039 (La.App. 1st Cir.), writ not considered, 619 So.2d 541 (La.1993).
The record indicates the FBI and the United States Attorney investigated a report that plaintiffs had made up the story about the accident and that the suit was fraudulent. Evidence of this allegation was a letter purporting to be signed by the plaintiffs stating the accident did not happen. At the time of trial, the FBI still retained the original.
Defendant complains that their first choice in handwriting experts was unavailable and could not testify from a photocopy. Defendant also complains that the person who allegedly supplied the document, Joanne Conn, made herself unavailable for service of a subpoena to testify. For these reasons, defendant argues the trial judge was mandated to grant a continuance.
The trial court originally scheduled the trial for October 25, 1993. When the document came to light, a criminal investigation was initiated. The trial date arrived and, at the request of the FBI and U.S. Attorney, the court continued the trial until November 29, 1993. When the second trial date arrived, defendant, the landowners, and UTP filed a joint motion to continue and to reopen discovery. The trial court denied the motion and proceeded to trial. Defendant does not argue that the investigation ultimately resulted in charges against plaintiffs.
The trial already had been continued for one month; the FBI and U.S. Attorney did not request another continuance; the court required all the plaintiffs and several other individuals to provide writing samples for comparison; and it also allowed handwriting expert testimony on the issue.
Joanne Conn apparently was not available for service through no contrivance of the defense. Nevertheless, the trial court previously denied a defense request to add her to the witness list on the pretrial order. Whether she was available for service was irrelevant, given the fact that the trial court was not going to allow her to testify.[4]
Furthermore, the fact that defendant's first choice in experts would not testify from a photocopy does not require a court to grant a continuance. We found no rule of law requiring the court to postpone trial until the parties have their first choice in experts available.
Granting a continuance was not mandatory under these circumstances, and the trial court did not abuse its discretion by denying the motion to continue.

D. Recusal
Defendant also contends the trial judge should have recused himself after one of plaintiffs' counsel referred to a polygraph test given to one of the plaintiffs by the FBI and suggesting the plaintiff passed it.
Louisiana Code of Civil Procedure article 151(B)(5) states a judge may be recused when he "[i]s biased, prejudiced, or interested *1361 in the cause or its outcome or biased or prejudiced toward or against the parties or the parties' attorneys to such an extent that he would be unable to conduct fair and impartial proceedings."
Apparently the only basis defendant argues for recusal is the possible effect this statement had on the trial judge because it was made by an attorney who was a member of the firm with which the judge was formerly associated.
A judge is presumed to be impartial. The party seeking to recuse cannot merely allege lack of impartiality; he must present some factual basis. Earles v. Ahlstedt, 591 So.2d 741 (La.App. 1st Cir.1991). Bias, prejudice, or personal interest must be of a substantial nature and based on more than conclusionary allegations. Pierce v. Charity Hospital, 550 So.2d 211, 213 (La.App. 4th Cir.), writ denied, 551 So.2d 1341 (La.1989).
Defendant offers absolutely no evidence that the trial judge was biased, prejudiced, or interested in the outcome of this case, or that he was biased or prejudiced toward or against any of the attorneys. A review of the trial transcript, the record of pretrial proceedings, and the trial judge's oral reasons for judgment indicate the trial judge comported himself with fairness and diligence toward all the parties throughout long and tedious litigation. Recusal based on this single comment would only have delayed the litigation further.
Furthermore, defendant did not file a written motion to recuse. Defense counsel suggested that the judge consider "excusing himself from the case and assigning it" to someone else. The trial judge responded, "I wish I could." The entire matter was then dropped. A party desiring to recuse a district court judge must file a written motion assigning the grounds for recusation. La. C.C.P. 154.

E. Jury Trial
In this case, plaintiffs brought suit pursuant to the "Savings to Suitors" clause, title 28, United States Code, section 1333(1). In 1988, the Legislature limited the availability of jury trials in maritime cases. If plaintiffs bring "a suit on an admiralty or general maritime claim under federal law" in state court under a federal "savings to suitors" clause, and if plaintiffs designate that suit as an admiralty or general maritime claim, then a trial by jury is available. La.C.C.P. art. 1732(6). If some other independent basis for jurisdiction exists, plaintiffs may opt for a jury trial. Thus, plaintiffs alone have control over whether the case is to be tried to a judge or jury. Parker v. Rowan Cos., 599 So.2d 296, 298 (La.), cert. den., ___ U.S. ___, 113 S.Ct. 203, 121 L.Ed.2d 145 (1992).
Defendant contends that the right to trial by jury is a fundamental right and that Louisiana Civil Procedure article 1732(6) unconstitutionally denies defendants their right to trial by jury because it makes that election exclusively the province of the plaintiff. Defendant argues that because plaintiffs did not show or attempt to show a "compelling state interest" in the unequal treatment of maritime tort defendants, the trial court should have declared article 1732(6) unconstitutional.
The Louisiana Supreme Court has considered this amendment and found that denial of a jury trial in a state court civil proceeding does not violate the due process clause and that it is within the province of the states to establish their own rules for the availability of jury trials. Parker, 599 So.2d at 300-01.
Therefore, we find the trial judge did not err in denying a jury trial.

F. Apportionment of Fault
Defendant argues the trial court erred in apportioning fault in the amount of 45% to it, 45% to the landowners, and 10% to Paul Usé. Defendant further contends that UTP should have been apportioned some measure of fault. State Farm, in brief, argues that the 10% fault of Paul Usé should be apportioned equally between the plaintiffs as participants in a joint venture.
In determining apportionment of fault, the court should consider the conduct of each party at fault and the extent of the causal relation between the conduct and the damages. Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967 (La.1985). The *1362 apportionment of fault is a factual finding which will not be disturbed on appeal unless it is clearly wrong. Cornish v. State, 93-0194, pp. 13-14 (La.App. 1st Cir. 12/1/94, 647 So.2d 1170, 1182).
The trial court clearly considered the conduct of each party found at fault. Its apportionment of fault will not be disturbed.

G. Contribution and Indemnity
Defendant argues that under general maritime law, tort indemnity is available where the fault of the party seeking indemnity is merely passive or vicarious. Defendant contends that its fault was of such a nature and that the trial court erred in failing to grant defendant indemnity against Paul Usé and/or H-Bar-H and Wylie Resources.
Under federal law, a vicariously liable or non-negligent tort-feasor is entitled to indemnity from a co-debtor guilty of actual fault. Hardy v. Gulf Oil Corp., 949 F.2d 826 (5th Cir.1992). Indemnity between liable maritime tort-feasors is not available only "where proportionate degrees of fault cannot be measured and determined on a rational basis." Id. at 832, quoting United States v. Reliable Transfer Co., 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (1975).
The trial court found defendant originally owned the Wylie A-2 well, then plugged and abandoned it in the waterway. The trial court found defendant had a responsibility to remove the pilings and cut the well casing to the mud line, that this duty also became the landowners' when defendant failed to do it, and that both parties were each 45% at fault for failing in their mutual duties. This duty, carried by both parties, was an active duty. It was not passive, nor vicarious. The trial judge reasonably apportioned fault among the tort-feasors; therefore, defendant is not entitled to indemnity under this theory of law.

H. Quantum
Defendant initially contends plaintiffs should not have been awarded any damages. For the foregoing reasons, we have affirmed the trial court's determination of liability and apportionment of fault. Alternatively, defendant argues the damage awards were excessive. Todd Usé and Paul Usé also have appealed as to quantum.
The correct standard for appellate review of a damage award is clear abuse of discretion. Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.1993). Moreover, our Supreme Court has stated:
the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
Hae Woo Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. den., ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).

1. Todd Usé
The trial court found Todd Usé (plaintiff) was in bad faith for seeking medical treatment from two orthopedic surgeons and a neurosurgeon over two and one-half years. The trial court, in oral reasons, stated:
Mr. Usé went to Dr. Kinnard, who ran tests on him and found nothing of any significancefrom an objective standpoint. An MRI showed a one millimeter bulge, only mild spasms on occasions. I note that Dr. Kinnard was, in fact, treating Mr. Usé on a conservative basis. I also note that Dr. Kinnard is known to be aggressive in the treatment of the patients when the facts justify aggressive treatment. There were none here.
To further complicate Todd Usé's picture, we have the motor vehicle accident three days after the boating accident. Todd was diagnosed that it only affected his neck; not his back. The doctors who have treated him seem to accept this, and the Court will likewise accept that.

*1363 During the course of treatment by Dr. Kinnard, Todd Usé chose another orthopedic surgeon, I must assume, for a second opinion. He started treatment with Dr. [Llewellyn] and Dr. Jarrod (sic) November 15th of 1990. These doctors are also known to be aggressive orthopedic surgeons when the conditions justify that form of treatment. They found no objective facts to warrant surgery.
A myelogram and an enhanced CT scan were performed. Minor findings were revealed. No neurological findings to suggest surgery. Only subjective complaints of pain.
Todd Usé again sought a third doctor, this time Dr. Ken Adatto. After two visits with this doctor, surgery was suggested, because the patient elected to have surgery. There [were] no neurological deficits, no mechanical problems, no instability. He had some subjective complaints of pain and what Dr. Adatto called dysfunction. The one millimeter bulge and conservative care [were] the proper course of treatment. However, surgery was offered and accepted by Todd Usé. The independent medical examination of Todd Usé was in line with the treatment suggested by Dr. Kinnard and Drs. [Llewellyn] and Jarrod (sic).
Looking at the objective findings and considering the actions of this plaintiff, it appears to the Court that Todd Usé was doctor shopping. I find that he was in bad faith when he elected to have the surgical procedure performed by Dr. Adatto. I do not find anything wrong with the procedure performed by Dr. Adatto; the fault lies with Todd Usé, not with the doctor, and the defendants should not be responsible for that surgery.
Special damages will be awarded as follows: future medical, nothing; past medical, $27,026.15; future wages, nothing; past wages, $44,008.98; general damage award for the low-back strain with the slight bulge of the disc for an extended duration, $30,000.
A trier of fact is in error for failing to award the full amount of medical expenses proven by a victim. Sumrall v. Sumrall, 612 So.2d 1010, 1014 (La.App. 2d Cir.1993). A tort-feasor must pay the victim for the cost of unneeded medical treatment of the victim's injuries unless the expense was incurred as a result of the bad faith of the victim. Orgeron v. Prescott, 93-926 (La.App. 5th Cir. 4/14/94), 636 So.2d 1033, writ den., 94-1895 (La. 10/28/94), 644 So.2d 654. Likewise, future medical expenses are also a legitimate item of damages. Sumrall, 612 So.2d at 1014.
Plaintiff testified he switched doctors on the recommendations of friends. He was told by a friend that Dr. Raeburn C. Llewellyn, a New Orleans neurosurgeon, was a good doctor, so he sought treatment from him. He later sought treatment from Dr. Kenneth N. Adatto, a New Orleans orthopedist, after a friend told him Adatto was good. The trial court admitted that nothing is inherently wrong with seeking medical treatment from a doctor who is recommended as being good by a friend. Seeking treatment from three doctors over two and one-half years also was not unreasonable, accepting, as plaintiff testified, that he continued to feel pain.
The trial court specifically did not fault Adatto for offering surgery, and yet faulted plaintiff for accepting the offer. An injured victim is not required to choose the best means of treatment or select the most skilled and competent physician. Druilhet v. Trinity Universal Ins. Co., 361 So.2d 40, 42 (La.App. 3d Cir.), writ den., 363 So.2d 535 (La.1978). Plaintiff cannot be faulted for accepting a course of treatment offered by his orthopedic surgeon, which was offered as a means of reducing his pain. No one testified plaintiff was told surgery was not advisable, and plaintiff testified the surgery has helped his pain. The fact that plaintiff chose surgery may be objectionable from the standpoint of the trial court, but this fact does not mean plaintiff was in bad faith. There was no evidence plaintiff was in bad faith. The trial court committed legal error in denying plaintiff past medical expenses for the surgery performed by Adatto. Therefore, the award for past medical expenses is hereby amended to $61,433.48, which reflects the amount actually incurred. Adatto indicated *1364 plaintiff will also require some minimal follow-up office visits and x-rays; therefore, future medical expenses will be awarded in the amount of $500.00.
The trial judge did not compensate plaintiff for loss of future wages or loss of future earning capacity, which plaintiff claims was error. If compensable injuries, proven by a preponderance of the evidence and supported by the record, are not included in the judgment, it is the function and duty of the appellate court to amend the judgment and include reasonable compensation for the omission of damages. Alphonso v. Charity Hospital, 413 So.2d 982, 985-86 (La.App. 4th Cir.), writ denied, 415 So.2d 952 (La.1982).
Plaintiff was twenty-three years old at the time of trial and, as the trial court acknowledged, had a fairly steady work history as a manual laborer. After a lower lumbar diskectomy and fusion, Adatto assigned a 10-15% disability rating and restricted plaintiff to no stooping or bending, no lifting heavy objects over twenty-five to fifty pounds repetitively, and no sitting or standing in the same position without moving around for forty-five minutes or more.
Both plaintiff and defense experts indicated plaintiff's job possibilities are jobs paying $4.25 to $5.00 an hour. Based on plaintiff's testimony, his prior job history indicates he was paid about $5.00 an hour for most of the jobs he held and about $8.00 an hour for two jobs he held. Plaintiff also testified that, although he has not worked since the accident, he has been hunting for deer, ducks, and rabbits, and has gone fishing. We also note plaintiff is young and could seek training in any number of sedentary jobs which would not impinge on the restrictions his doctor has placed upon him. We do not find the trial court was clearly wrong in denying damages for future lost wages.
However, defendant has lost the capacity to do manual labor in the future. For this he will be compensated $100,000.00.
The trial court's general damage award did not encompass plaintiff's back surgery and permanent impairment. If an award is below that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances, we may raise the award only to the lowest amount reasonably within the trier of fact's discretion. Theriot, 625 So.2d at 1340-1343. We find the lowest amount a reasonable fact finder could have awarded Todd Usé is $200,000.00.

2. Paul Usé
The trial court found Paul Usé (plaintiff) suffered a contusion to his right knee and a tear of the medial meniscus (cartilage in the knee), strained his neck, suffered a two-millimeter disk bulge between C-5 and C-6, and "to some extent" aggravated his low back problems. The court found plaintiff failed to mitigate his physical problems by reducing his weight and quitting smoking, both of which were recommended by plaintiff's doctor. The court further found that plaintiff
will, more probably than not, in my opinion based on the evidence in the findings of Dr. Landry not have neck surgery. He will most probably than not have his knee repaired by [arthroscopic] surgery. He has, more probably than not, medically aggravated and or strained his low back.
Accordingly, the court awarded plaintiff $8,379.72 for past medical expenses and $17,500.00 for future knee surgery. The court awarded $50,000.00 in general damages. It stated the general damages were
for his knee, including the surgery, his neck sprain with disc bulges, and his low back strain, taking into consideration that he needs to stop smoking and lose weight as suggested by his doctor....
Plaintiff contends the trial court erred in finding plaintiff's cervical problem was a soft-tissue injury, in finding plaintiff would not need surgery in the future on his cervical spine, and in awarding $50,000.00 in general damages, which did not include general damages for the future neck surgery.
A review of the record and the court's oral reasons shows the court carefully considered the testimony of plaintiff and his orthopedic surgeon, Dr. Richard Landry. The court *1365 specifically included plaintiff's two-millimeter disc bulge in the general damage award. The court did not find plaintiff would not need surgery in the future. Rather, based on the testimony of both plaintiff and his doctor, the court concluded plaintiff would not have future neck surgery.
Plaintiff feared back surgery because of a prior bad experience; plaintiff's orthopedic surgeon found plaintiff to be a poor candidate for surgery because of his pulmonary problems; plaintiff's pulmonologist recommended against surgery; at the time of trial, three and a half years had elapsed without surgery; plaintiff had no plans for back surgery in the future; and plaintiff's doctor did not speculate when in the future plaintiff may ultimately require surgery in spite of his other obstacles to it.
Furthermore, Landry testified that a "one millimeter disk we find seldom needs surgery, three millimeter almost always requires surgery. Two is sort of an area that can go either way." While Landry felt plaintiff may need neck surgery, he also felt he would be at "great risk of pulmonary problems."
The trial court was not clearly wrong in finding that plaintiff would not have surgery. Berthelot v. Imes, 459 So.2d 1384 (La.App. 1st Cir.1984). See also, Guidry v. Lockard, 215 So.2d 549 (La.App. 1st Cir.1968). Given this factual finding, the award of $50,000.00 in general damages to Paul Usé was not an abuse of discretion.

3. Jules Usé and Chris Lirette
Jules Usé was awarded a total of $377,035.73, which covered the significant past and future knee problems he experienced and his back problems. The trial court also found Jules Usé had failed to mitigate his problems by losing weight and quitting smoking, as suggested by his doctors.
Chris Lirette was awarded $356,594.66, which covered a two-level back fusion and an anticipated future surgery to refuse a section which did not fuse.
Neither of these awards was excessive or an abuse of discretion, and they will not be disturbed.

I. Conclusion
The judgment of the trial court is affirmed in all respects, except as to Todd Usé. The portion of the judgment awarding damages to Todd Usé is increased to a total of $405,942.46, which reflects an increase in special damages for past medical expenses, an increase in general damages, and an award for lost earning capacity. All costs of this appeal are assessed to defendant Shell Oil Company.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] The judgments in favor of Jules and Lirette were made subject to credits for payments previously made on behalf of Paul Usé in the amounts of $5,522.63 and $17,128.04, respectively. Paul Usé's judgment was subject to 10% reduction for his comparative fault.

Defendant, the landowners, Paul Usé, and State Farm were cast in judgment for $4,290.00 in expert witness fees in the same percentages as their fault, and interest was awarded from the date of the accident. Motions for new trial were filed on behalf of Paul Usé and Todd Usé, which were denied.
[2] Defendant contends that under general maritime law, the standard for negligence is higher, citing In re Cooper/T. Smith, 929 F.2d 1073 (5th Cir.), cert. den., 502 U.S. 865, 112 S.Ct. 190, 116 L.Ed.2d 151 (1991). This case states that general maritime law standards for negligence are higher than the standard of negligence for a Jones Act Claim. Cooper specifically states the plaintiff must demonstrate there was a duty, breach of that duty, injury to the plaintiff, and causation between the defendant's conduct and the injury. Furthermore, the resulting harm must be reasonably foreseeable. Cooper, 929 F.2d at 1077. These standards are not remarkably different from state standards, except that state law would apply a "duty/risk" analysis, rather than a "reasonably foreseeable" analysis.
[3] Defendant also argues that Department of Conservation Order 29-B cannot be a proper basis for a finding of liability because it is preempted by federal law. If it is not preempted, defendant argues the Commissioner of Conservation lacked authority to issue the order. We pretermit discussion of this issue because the trial court had ample alternative grounds on which liability was based.

However, we note there is concurrent jurisdiction of the state and federal government over the erection of structures obstructing navigation. North Shore Boom & Driving Co. v. Nicomen Boom Co., 212 U.S. 406, 29 S.Ct. 355, 53 L.Ed. 574 (1909). Furthermore, the federal government long ago approved of state legislation which aids commerce by improving a navigable waterway by removing obstructions and specifically found such legislation does not encroach on the power of Congress. Faust v. City of Cleveland, 121 F. 810 (6th Cir.1903). Department of Conservation Order 29-B clearly aids in clearing navigable waterways of obstructions by requiring that pilings be removed and well casings be cut to the mud line.
[4] The transcript shows the trial court did not think Conn's testimony was important anyway. Ample provisions were made allowing testimony from experts on the document and from the individuals who allegedly signed it. Writing exemplars were provided to the defense from the parties and from several other individuals.