781 So.2d 796 (2001)
Alfred DEAN
v.
RAMOS CORPORATION d/b/a Primemen, Inc. and Oceanengineering International, Inc.
No. 00-CA-1621.
Court of Appeal of Louisiana, Fifth Circuit.
February 28, 2001.
*798 Lester J. Waldmann, Brian C. Beckwith, Gretna, Louisiana, for appellant, Alfred Dean.
Ralph E. Kraft, Preis, Kraft, Roy, Lafayette, LA, for appellee, Oceaneering International, Inc.
Len R. Brignac, New Orleans, Louisiana, for appellee/defendant.
Panel composed of Judges JAMES L. CANNELLA, CLARENCE E. McMANUS and PHILIP C. CIACCIO, Pro Tempore.
CANNELLA, Judge.
Plaintiff, Alfred Dean, appeals from two judgments in a maritime and/or negligence action against Ramos Corporation, d/b/a Primemen, Inc. (Primemen) and Oceaneering International, Inc. (Oceaneering) We affirm.
Primemen, supplying laborers to perform temporary jobs, employed Plaintiff as a general land laborer, which included maintenance and cleaning work. Before working for Primemen, Plaintiff worked directly as a deck hand, cook and relief captain on vessels for other companies. During his employment with Primemen, Plaintiff worked in a pipe yard, in an aluminum salvage plant, and cleaned the holds of vessels. For six days during August, one day in October, and several days in November of 1994, Plaintiff worked at two facilities owned by Oceaneering cleaning the yards, draining the dive tanks used for diver training, washing trucks and doing other odd jobs around the facilities and *799 around the house of the Port Captain at the Berwick dock yard.
On November 7, 1994, Plaintiff was assigned to the M/V OCEAN INSPECTOR II, a vessel owned by Oceaneering, as a temporary cook to replace the permanent cook who was on vacation. The vessel is a small utility dive boat used primarily to transport divers employed by the company. Plaintiff was on the boat from November 7, 1994 to November 9, 1994.
On November 7, 1994, while taking a diver to another location, the port engine "blew" causing the boat to run on one engine back to the dock. The engine failed due to the act of a previous engineer who had turned off the alarm that would have let the crew know that a water hose broke. The engineer was subsequently fired. The engine then had to be removed for repairs by another company specializing in this work. In order to remove the engine, a hole was cut into the main deck and the engine was lifted out. This allowed access to the bilge below the engine room floor on deck. The captain, William Hoolahan, used the opportunity to order the two other crew members, Plaintiff and the engineer, to clean the area before installing the new engine. Because the bilge contained some oil in the water, Plaintiff was ordered to distribute absorbent pads into the water to soak up the oil. In order to do so, he climbed down from the engine room deck into the bottom of the boat. The engineer was positioned on the engine room floor so that he could take the oily pads from Plaintiff and disposed of them in bins. During this process, Plaintiff alleges that he slipped and fell while stepping sideways over a seven-inch "rib" and that he fell on the rib, injuring his low back. He left the boat the next day, complaining of back pain. Plaintiff started treatment that ultimately resulted in surgery.
On November 8, 1995, Plaintiff filed a petition for damages against Primemen under the Jones Act, 46 U.S.C.A. 688 and against Oceaneering, the vessel owner, under general maritime law. He further alleged that the boat was unseaworthy and requested maintenance, as well as damages. The Louisiana Workers' Compensation Corporation intervened and Primemen filed a cross-claim against Oceaneering.
On December 4, 1998, Primemen filed for a summary judgment. On January 4, 1999, a summary judgment was requested by Oceaneering. Both motions asserted that Plaintiff was not a seaman and his remedy, if any, was limited to general negligence.[1] The motions were supported by Plaintiff's deposition and an affidavit by Raymond Johnson, the President and owner of Primemen, which asserted that Plaintiff was a temporary laborer employed by Primemen, who assigned him to various land-based jobs, as well as the one job on the boat owned by Oceaneering. Plaintiff relied on his deposition in his opposition to the motion to show that he was doing the work of a seaman at the time that he was injured.
After a hearing, the trial judge rendered a judgment granting the motions filed by Defendants on February 1, 1999 and dismissing Primemen from the lawsuit. The case against Oceaneering was tried by the trial judge on March 1 and 2, 1999. On May 25, 1999, the trial judge rendered a verdict in favor of Oceaneering, finding that the accident could not have happened *800 the way that Plaintiff described it and thus, Plaintiff failed to bear his burden of proof of negligence against Oceaneering.
On appeal, Plaintiff asserts that the trial judge erred in granting the summary judgment and in failing to find that he was a seaman. Plaintiff further asserts that the trial judge erred in failing to find that he proved Oceaneering negligent and in failing to award damages for his injury.

SUMMARY JUDGMENTS AND STATUS OF SEAMAN
La.C.C.P. art. 966 provides that a summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. Under a 1997 amendment, the summary judgment is favored, but the burden of proof remains with the movant. Chiasson v. New Orleans Pub. Group, Inc., (La.App. 5th Cir.4/25/00), 761 So.2d 89, 91; KLL Consultants, Inc. v. Aetna Cas. & Sur. Co. of Illinois, 99-14 (La.App. 5th Cir.6/1/99), 738 So.2d 691, 694. Further, "if the movant will not bear the burden of proof at trial on the matter before the court," "the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." C.C.P. art. 966. Thus, "if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial there is no genuine issue of fact." Id. Appellate courts should review the granting of a summary judgment de novo under the same criteria governing the trial court's consideration of whether summary judgment is appropriate. KLL Consultants, Inc., 738 So.2d at 694.
Generally, state courts exercising concurrent maritime jurisdiction are bound to apply substantive federal maritime statutory law and to follow United States Supreme Court maritime jurisprudence. Milstead v. Diamond M Offshore, Inc., 95-2446 (La.7/2/96), 676 So.2d 89, 94.
The question of seaman status under the Jones Act is a mixed question of law and fact. McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 356, 111 S.Ct. 807, 818, 112 L.Ed.2d 866 (1991). However, "Where undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation, the court may take the question from the jury by granting summary judgment or a directed verdict." Chandris, Inc. v. Latsis, 515 U.S. 347, 370, 115 S.Ct. 2172, 2191, 132 L.Ed.2d 314 (1995).
Under the Jones Act, in order to be entitled to seaman status, the employee must do "the ship's work," a broad threshold requirement, such that "All who work at sea in the service of a ship" are eligible for seaman status. Chandris, 515 U.S. at 368, 115 S.Ct at 2190, citing McDermott International, Inc. v. Wilander, 498 U.S. at 354, 111 S.Ct. at 817. The second requirement for seaman status under the Jones Act is that the employee's connection to a vessel in navigation, or to a group of such vessels, must be substantial in terms of both its duration and its nature. Chandris, 515 U.S. at 368, 115, S.Ct. at 2190. In Chandris, the Court noted that the purpose of this provision was to ensure Jones Act coverage to true seamen, while precluding claims of land-based workers who have only a transitory or sporadic connection to a vessel in navigation and, therefore, whose employment does not *801 regularly expose them to the perils of the sea. Id.
In defining the prerequisites for Jones Act coverage, the Chandris Court held that one should focus upon the essence of what it means to be a seaman, instead of allowing jurisprudential "tests" to obscure such a finding. The Court recommended that the total circumstances of an individual's employment be considered, as the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time. Chandris, 515 U.S. at 368, 115 S.Ct. at 2190-91. See also: Wisner v. Professional Divers of New Orleans, 98-1755 (La.3/2/99), 731 So.2d 200, 204. The court further stated:
We agree with the Court of Appeals that seaman status is not merely a temporal concept, but we also believe that it necessarily includes a temporal element. A maritime worker who spends only a small fraction of his working time on board a vessel is fundamentally land based and therefore not a member of the vessel's crew, regardless of what his duties are. Naturally, substantiality in this context is determined by reference to the period covered by the Jones Act Plaintiff's maritime employment, rather than by some absolute measure. Generally, the Fifth Circuit seems to have identified an appropriate rule of thumb for the ordinary case: A worker who spends less than about 30 percent of his time in the service of a vessel in navigation should not qualify as a seaman under the Jones Act. This figure of course serves as no more than a guideline established by years of experience, and departure from it will certainly be justified in appropriate cases. As we have said, "[t]he inquiry into seaman status is of necessity fact specific; it will depend on the nature of the vessel and the employee's precise relation to it." Wilander, 498 U.S., at 356, 111 S.Ct., at 818. Nevertheless, we believe that courts, employers, and maritime workers can all benefit from reference to these general principles. And where undisputed facts reveal that a maritime worker has a clearly inadequate temporal connection to vessels in navigation, the court may take the question from the jury by granting summary judgment or a directed verdict....
Chandris, 515 U.S. at 371, 115 S.Ct. at 2191.
In this case, Plaintiff fails to meet the requirements of a seaman. Although the work he was performing on the boat was in service of the vessel, all of the evidence shows that his job on the vessel was temporary. Plaintiff testified that this particular job was temporary, but he also stated that he thought that Oceaneering was going to offer him a permanent position, although that belief was not supported by the affidavits or any other evidence from Oceaneering. However, the hope of a permanent position as a seaman does not impose seaman status on the worker. Furthermore, Plaintiff had no relationship with any other vessel. Under the totality of these circumstances, we find that Plaintiff was not a seaman at the time of the alleged injury. Thus, the trial judge did not err in granting the summary judgments filed by Defendants.

THE ACCIDENT
The trial judge did not reach the issue of whether Oceaneering was negligent in allowing oil to accumulate in the bilge which necessitated Plaintiff's entry into the area, because she determined that the accident could not have happened the way Plaintiff described it. She did not find that Plaintiff intentionally misstated the event, but *802 was unable to accept beyond a reasonable doubt his version due to the physical setup of the engine room and bilge. This could be attributable to his being in the bilge approximately five minutes. Nonetheless, Plaintiff was unable to prove the accident by a preponderance of the evidence.
Under the general maritime law, the Plaintiff must demonstrate that there was a duty, breach of that duty, injury to the Plaintiff, and causation between the Defendant's conduct and the injury. Furthermore, the resulting harm must be reasonably foreseeable. In re: Cooper/T. Smith, 929 F.2d 1073, 1077 (5th Cir.), cert. den., 502 U.S. 865, 112 S.Ct. 190, 116 L.Ed.2d 151 (1991); Use v. Use, 94 0972 (La.App. 1st Cir.4/7/95), 654 So.2d 1355, 1365. "These standards are not remarkably different from state standards, except that state law would apply a "duty/risk" analysis, rather than a "reasonably foreseeable" analysis." Use, 654 So.2d at 1365. Furthermore, it is a settled principle of maritime law that a shipowner owes the duty of exercising reasonable care toward those lawfully aboard the vessel who are not members of the crew. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 630, 79 S.Ct. 406, 409, 3 L.Ed.2d 550 (1959).
In this case, Plaintiff testified that he slipped and fell when he was attempting to sidestep over a "rib" seven inches high, as he was throwing the oil absorbent pads into the bilge water. However, the evidence shows that the ribs of the boat are not 7 inches high, as testified to by the Captain, David Bertner, the Diving Supervisor, and Theodore Hess, the vessel manager or port captain at the time of the alleged accident. Those witnesses described the engine room and bilge and their testimony was supported by photographs and diagrams.
The evidence shows that the engine room floor or deck is covered by sections of removable deck plates. Under the deck plates is the bottom of the boat or bilge area that captures water that may get into the boat from various sources. The bilge is divided by vertical plates into square compartments approximately 19 to 20 inches across (baffles). The baffles are designed to prevent the accumulated water from sloshing from one side of the boat to the other, which would cause the boat to list or become unstable. Instead, the water is allowed to move in small amounts from section to section through small holes in the bottom of the compartments. The ribs of the boat are used as the base for the vertical plates that vary in height from 16 inches to 41 inches at the center of the boat, depending on the slope of the hull. On top of the vertical plates are flat metal bars that extend 1 to 2 inches on either side of the vertical plate. These flat bars support the deck plates and/or the engine. When the port engine was removed, it exposed the bilge area beneath it. Since some oil had accumulated in the bilge, the Captain ordered the area to be cleaned before the new engine was installed.
Plaintiff testified that he was standing approximately one to two feet from the center of the boat (the keel) when he stepped over the seven inch rib and fell on his back on the rib. However, the height of the compartment divider at that location was approximately 32 inches, and the depth at the center was 41 inches. Plaintiff testified he stands 5'6", the same height as the port captain. In the photographs taken by the port captain who was in the photographs, the walls of the baffles would have reached Plaintiffs thigh. In order to cross from one baffle to the next, Plaintiff would have had to raise his leg very high or sit on and swing over the flat bars on top of the baffle. In either case, *803 because of the size of the compartments, Plaintiff could not have fallen on his back on the rib.
The testimony also showed that in some sections, small pipes that were several inches high crossed the compartments. Plaintiff could have fallen while stepping over one of these. However, the trial judge did not find that the accident happened in that manner either. The trial judge concluded that, if Plaintiff sustained a fall, he would have straddled the baffle, or caught himself on the baffles or deck plates surrounding him. In addition, Plaintiff contended that the Captain witnessed his fall, asked Plaintiff to show him his back and found that Plaintiffs back was bruised. The Captain testified that he did not witness the accident, filled out the accident report after Plaintiff came to him to report that he had fallen, inspected Plaintiffs back and found no bruising or other signs of injury.
Louisiana courts of appeal apply the state manifest error standard of review in general maritime and Jones Act cases. Milstead, 676 So.2d @ 96; Domonter v. C.F. Bean Corp., 99-1204 (La.App. 5th Cir.4/25/00), 761 So.2d 629, 637, writ denied, 00-1872 (La.9/29/00), 770 So.2d 354. Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989); Domonter, 761 So.2d at 637. The issue to be resolved by the reviewing court is not whether the factfinder was right or wrong, but whether his conclusion was a reasonable one. Stobart v. State, Through DOTD, 617 So.2d 880, 882 (La.1993); Domonter, 761 So.2d at 637. Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 882; Domonter, 761 So.2d at 637. However, where documents or objective evidence so contradicts a witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error, even in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d at 844-45; Domonter, 761 So.2d at 637. After our review of the evidence, we find that the trial judge was not clearly wrong in failing to find that Plaintiff was injured as he described.
Furthermore, even if Plaintiff proved the accident occurred in the bilge, the evidence does not support a finding of negligence. The testimony shows that the engine had to be removed and replaced due to the negligence of a previous engineer, whose employment was terminated for his negligence. However, the evidence as to the amount of oil left in the bilge was sparse, as was any evidence that the oil was excessive. The evidence only showed that there is sometimes oil left from the removal of the engine and the Captain was taking the steps necessary to correct the problem by sending the workers into the bilge to clean it. Thus, we find the vessel was not negligent.
Accordingly, the judgment of the trial court is hereby affirmed. Costs are to be paid by Plaintiff.
AFFIRMED.
NOTES
[1] An injured worker who is covered by neither the Jones Act nor the Longshore and Harbor Workers' Compensation Act (LHWCA) may still recover under applicable state workers' compensation law or, in admiralty, under general maritime tort principles, which are less generous than Jones Act's protections. See: Chandris, Inc. v. Latsis, 515 U.S. 347, 355, 115 S.Ct. 2172, 2184, 132 L.Ed.2d 314.